**James E. DeCOSTA, Vinson D. Thomas, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 721–88C.

United States Claims Court.

July 30, 1991.

Daniel M. Katz, Washington, D.C., for plaintiffs. Ira M. Lechner, of counsel.

Domenique Kirchner, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and James M. Kinsella, Washington, D.C., for defendant. Major Joyce I. Spisak, Office of the Judge Advocate General, U.S. Air Force, of counsel.

### OPINION

BRUGGINK, Judge.

This is an action brought under certain provisions of the Federal Employees Pay Act ("Title 5"). 5 U.S.C. §§ 5542, 5545, 5546 (1988). As firefighters, plaintiffs presently receive standby premium pay in lieu of other types of premium pays. 5 U.S.C. § 5545(c)(1); 5 C.F.R. § 550.141 (1990). They contend that the amount of pay they would otherwise receive for dif-

ferent types of premium pay is greater than the standby premium pay they presently receive, and that therefore, pursuant to 5 C.F.R. § 550.142, they should be getting those other premium pays, and not standby pay.

Trial was held on the question of the amount of time during which plaintiffs regularly perform actual work in excess of an eight-hour workday. The court found that plaintiffs currently work 4 hours and 40 minutes of actual work beyond 8 hours per day, and that 2 hours and 40 minutes of this work is nighttime work. 22 Cl.Ct. 165, 177 (1990). The court directed the parties to determine whether, in accordance with section 550.142(a), plaintiffs received more by way of an annual premium pay for regularly scheduled standby duty than the premium pay they would otherwise receive under the individual Title 5 premium statutes. The court also directed the parties to determine the amount of plaintiffs' recovery if the Government has improperly compensated plaintiffs in accordance with section 550.142.

Plaintiffs submitted calculations to defendant regarding the Government's liability and the amount of damages, as well as a document titled, Plaintiffs' Methodology Regarding Calculation of Damages. Defendant's counsel raised two objections to plaintiffs' analysis and calculations, and the court allowed the parties to brief the following: (1) whether, for purposes of determining liability and for purposes of determining damages, the premium for daily overtime hours up to the fortieth hour of work in a week should be calculated at one and one-half times or at one-half times each plaintiff's hourly rate of basic pay, capped at GS–10, Step 1; and (2) if liability attaches under the individual premium pay statutes, whether defendant was entitled to apply the two-thirds rule in lieu of calculating the time plaintiffs spent eating and sleeping for purposes of overtime calculation under section 5542.

For the reasons set forth below, the court holds that plaintiffs' premium for daily overtime hours up to the fortieth hour of work in a week should be calculated at one-half times their hourly rate of basic pay when they have already received basic pay for those same hours. Using this method of calculating overtime compensation, the court finds that the standby pay plaintiffs currently receive is greater than the amount they would have received under the individual premium statutes. Since liability does not attach under the individual premium pay statutes, it becomes unnecessary to address the second issue.

## I. FACTUAL BACKGROUND

Plaintiff James E. DeCosta has been employed as a firefighter since 1975. DeCosta was promoted to the civilian position of Assistant Chief for Operations for Andrews Air Force Base ("AAFB") Fire Department on August 22, 1982. Plaintiff claims that he has been improperly compensated for this work since December 13, 1982 until the present.

Plaintiff Vinson D. Thomas has been employed by defendant as a firefighter since 1969. Thomas was promoted to Assistant Chief for Operations for AAFB Fire Department on November 27, 1983. Thomas claims he has been improperly compensated for the work he has done since his promotion to Assistant Chief until the present.

Both Assistant Chief DeCosta and Assistant Chief Thomas are at Grade 10, Step 7 on the General Schedule ("GS") and earn an annual basic rate of pay of $32,648. On a weekly basis plaintiffs have received basic pay computed by dividing the annual basic pay by 2,087 hours pursuant to 5 U.S.C. § 5504(b) and by multiplying that amount by the number of hours worked. In addition to their basic pay, plaintiffs have also received from the date of their promotion to Assistant Chief "standby premium pay" in the amount of 25 percent of their rate of basic pay (calculated at a rate of GS–10, Step 1) pursuant to 5 U.S.C. § 5545(c)(1).

Plaintiffs currently work 3 alternating 24–hour shifts per week, resulting in a 72–hour tour of duty.[1] 22 Cl.Ct. at 168. Dur-

---

1. From March 15, 1987 until September 29, 1988, plaintiffs worked a 60–hour workweek,

ing each 24–hour shift, plaintiffs perform 12 hours and 40 minutes of actual work per day (8 hours of regular work and 4 hours and 40 minutes of overtime, of which 2 hours and 40 minutes are performed within the nighttime differential period). *Id.* at 177. Thus, plaintiffs currently perform 38 hours of actual work per week.

## II. STATUTORY BASIS FOR PLAINTIFFS' CLAIMS

Five different types of premium pay are authorized by 5 U.S.C. Ch. 55, Subchapter V and 5 C.F.R. Part 550, Subpart A (1990): 5 U.S.C. § 5542 (overtime), 5545(a) (nighttime work), 5546(a) (Sunday work), 5546(b) (holiday work), and 5545(c)(1) (standby pay). Standby premium pay is allowed in lieu of rather than in addition to the other premium pays. The statutory authorization for standby premium pay states in relevant part:

(c) The head of an agency, with the approval of the Office of Personnel Management may provide that—

(1) an employee in a position requiring him regularly to remain at, or within the confines of, his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter.... Premium pay under this paragraph is determined as an appropriate percentage not in excess of 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10 ... by taking into consideration the number of hours of actual work required in the position, the number of hours required in a standby status at or within the confines of the station, the extent to which the duties of the position are made onerous by night, Sunday, or holiday work, or by being extended over periods of more than 40 hours a week, and other relevant factors....

5 U.S.C. § 5545(c)(1).

comprised of 5, 24–hour shifts in a 2–week

The statute is expressed in regulatory terms at 5 C.F.R. § 550.141. That section provides in relevant part:

An agency may pay premium pay on an annual basis, instead of the premium pay prescribed in this subpart for regularly scheduled overtime, night, holiday and Sunday work to an employee in a position requiring him regularly to remain at, or within the confines of his station during longer than ordinary periods of duty, a substantial part of which consists of remaining in a standby status rather than performing work.

Pursuant to 5 C.F.R. § 550.142, an agency may pay standby premium pay under section 550.141 only if that pay, over a period of time sufficient to reflect the full cycle of an employee's duties and the full range of conditions in his position, would be more than the other particularized premium pays available for the hours of "actual work" excluding standby time when no actual work is performed, and would be less than premium pay for hours of duty including non-working standby time. Actual work is defined by 5 C.F.R. § 550.143(e):

An employee is performing actual work, rather than being in a standby status, when his full attention is devoted to his work, even though the nature of his work does not require constant activity (for example, a guard on duty at his post and a technician continuously observing instruments are engaged in the actual work of their positions).

Under section 550.142, actual work is contrasted with standby time which is defined as those times when an employee "is not required to perform actual work and is free to eat, sleep, read, listen to the radio, or engage in other similar pursuits." 5 C.F.R. § 550.143(e).

In making the comparison calculations between standby and the other premiums, there is no dispute between the parties as to the proper methodology to be used in determining the amount of nighttime, Sun-

period. 22 Cl.Ct. at 168 n. 2.

day or holiday pay to which plaintiffs would be entitled to under the individual premium pay statutes. However, the parties disagree as to the proper methodology to be used in determining the amount of overtime pay to which plaintiffs would be entitled to under 5 U.S.C. § 5542.[2] That section provides:

(a) For full time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 in an administrative workweek, or ... in excess of 8 in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates:

(1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.

(2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10, and all that amount is premium pay.

The statute is expressed in regulatory terms at 5 C.F.R. § 550.113.

The language used in the overtime premium pay provision is somewhat different from the other premium pay provisions. Section 5545(a) of Title 5 provides that "an employee is entitled to pay for nightwork *at his rate of basic pay*[3] *plus premium pay* amounting to 10 percent of that basic rate."* (Emphasis added.) Section 5546(a) uses similar language: "[a]n employee who performs work ... on Sunday is entitled to pay ... at the rate of his basic pay, plus premium pay at a rate equal to 25 percent

of his rate of basic pay." Section 5546(b) provides that "[a]n employee who performs work on a holiday ... is entitled to pay at the rate of his basic pay, plus premium pay at a rate equal to the rate of his basic pay ...." As to night, Sunday, and holiday provision, therefore, the code constructs a total pay per hour which consists of basic pay, *plus* an additional percentage.

The language in the overtime statute is thus distinct. The "overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of pay of the employee, and all that amount is premium pay." But for the last clause, it would appear that the total amount of compensation for any overtime hour would be 150 percent of basic pay. The last clause engenders confusion, however, for the following reason.

The overtime hours in question are somewhat unusual. For a typical employee working a 5–day, 40–hour week, it would be plain enough that hours in excess of 8 in a day would also be in excess of 40 per week. If the employee worked a ninth hour during the weekday, or an additional hour on a Saturday, that would be an hour for which she had not yet received basic pay. Overtime pay per hour would be paid in a *total* of 150 percent of basic pay. In other words, that would not be on top of basic pay.

Plaintiffs' circumstances are different. They are entitled to their entire basic pay after working 3 shifts which include a minimum of 8 hours of actual work each day, i.e., a total of 24 hours per week. For that reason, hours which qualify for overtime (because they are in excess of 8 per day) may still not push the total number of actual hours worked beyond 40 hours per week.

Section 5542 makes no distinction between employees who work in excess of 8

---

**2.** Under OPM's methodology, plaintiffs received $43,484.22 in standby premium as opposed to $42,546.99 in individual premiums for the period of years at issue. Under plaintiffs' approach, plaintiffs would receive $102,660.95 in individual premiums as opposed to the $43,484.22 in standby premium that they already received. Because the parties agree on all the premium calculations except the calculation of overtime under section 5542, the difference in the figure

for individual premiums is solely due to the differing methodologies in calculating the overtime premium under section 5542.

**3.** Basic pay is that pay which a *federal employee* is entitled to in accordance with the GS schedule set forth in 5 U.S.C. § 5332 and the provisions set forth in 5 U.S.C. § 5504.

hours in a day and those who work in excess of 40 in a week. Thus, under 5 U.S.C. § 5504, plaintiffs are entitled to basic pay for the 38 hours of actual work, and under 5 C.F.R. § 550.142, plaintiffs are also entitled to overtime compensation under 5 U.S.C. § 5542 for the hours of actual work in excess of 8 in a day, in their case, the 4 hours and 40 minutes.

■ The immediate controversy between the parties arises because of the Government's practice of crediting the amount plaintiffs receive for basic pay (up to 40 hours) in calculating overtime between the twenty-fourth and fortieth hour in a week. Thus, for any given hour in excess of 8 per day, DeCosta and Thomas are paid a total of 150 percent of basic pay. In effect they receive basic pay, plus a 50 percent premium. There is no difference, therefore, between the twenty-fifth hour of actual work (which begins the running of overtime in their case) and the forty-first. Both are paid at the same rate, according to the Government, namely, 150 percent of basic pay.

Plaintiffs contend that this method of calculating overtime is inconsistent with section 5542 which specifically states that the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay and "all that amount is premium pay." According to plaintiffs, if "all that amount is premium pay," then no part can be composed of basic pay and the Government is not justified in crediting itself with the basic pay they are entitled to under section 5504. The net effect of plaintiffs' argument is that, as to hours in excess of 24 and less than 40 per week (in this case, 14), total compensation amounts to 250 percent of basic pay. Ironically, they would concede that overtime hours in excess of 40 hours of actual work per week would be paid at a total rate of 150 percent of basic pay per hour.

## III. DISCUSSION

### A. *The First Issue.*

As defendant points out, an unstrained reading of that part of section 5542 preceding the final clause of subparagraphs (a)(1) and (2), is that the total pay for hours beyond 8 in a day is 150 percent of basic pay: "[H]ours ... in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for ... at the following rates: (1) ... the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay...." To collapse this language even further, "[H]ours ... in excess of eight hours in a day ... shall be paid for [at] ... an amount equal to one and one-half times the hourly rate of basic pay...." Reading the tag-end phrase, "and all this amount is premium pay," to require the payment of both overtime and basic pay thus seems to conflict with the instruction of the bulk of the overtime provision.[4]

Defendant argues that, not only is there an internal conflict within section 5542, but that resolving it to give literal meaning to the disputed clause, as plaintiffs urge, leads to absurd results. It is absurd, defendant argues, to receive a total of 250 percent of basic pay for some overtime hours, and only 150 percent for others, particularly when the later-accrued hours are paid at the lower rate. Plaintiffs, indeed, can point to no principled reason why this anomalous result should be permitted.

In determining whether plaintiffs' literal reading of section 5542 is the correct one, it would be helpful to know what was intended by the addition of the words, "and all that is premium pay." Unfortunately, none of the legislative history to which plaintiffs direct the court, nor any other of which the court is aware, explains why that language was added. In the absence of that type of direct explanation, the court

---

4. Defendant also argues that the result plaintiffs advocate would be inconsistent with the pay cap for overtime included in subparagraphs (a)(1) and (2). The limit on the basic pay multiplier is the pay of a GS–10, Step 1 employee. There is no question that plaintiffs' calculation would exceed that limit, but defendant's argument assumes the conclusion it is urging. Nevertheless, this phenomenon adds to the impression that Congress did not intend the result sought by plaintiffs.

has to look to the evolution of the present statute in order to attempt to give meaning to the whole.

The disputed langauge has not always coexisted with the other provisions of the overtime section. It was added in 1954, at a time when federal employees were not entitled to overtime compensation for hours worked in excess of eight in a day. Overtime only applied for hours in excess of 40 in a week. *See* Federal Employees Pay Act Amendments of 1954, Pub.L. No. 763, Title II, § 203, 68 Stat. 1109 (1954). It was not until the Federal Salary and Fringe Benefits Act of 1966, Pub.L. No. 89–504, Title IV, § 404(a), 80 Stat. 297 (1966), that employees became entitled alternatively to overtime compensation for hours worked in excess of eight in a day.[5]

The first predecessor to section 5542 was section 201 of the Federal Employees Pay Act of 1945, Pub.L. No. 106, Title II, § 201, 59 Stat. 296 (1945). Prior to 1945, there was no generally applicable overtime provision applicable to federal employees.[6] That provision used the following language:

Officers and employees to whom this title applies shall, in addition to their basic compensation, be compensated for all hours of employment, officially ordered or approved, in excess of 40 hours in any administrative workweek, at overtime rates as follows:

(a) For employees whose basic compensation is at a rate less that $2,980 per annum, the overtime hourly rate shall be one and one-half times the basic hourly rate of compensation: Provided, That in computing such overtime compensation for per annum em-

ployees, the basic hourly rate of compensation shall be determined by dividing the per annum rate by two thousand and eighty.[7]

(b) For employees whose basic compensation is at a rate of $2,980 per annum more, the overtime hourly rate shall be in accordance with and in proportion to the following schedule: [providing for a decreasing overtime rate as the basic rate of compensation of an employee rises].

Neither the phrase in question nor the expanded application of overtime (to hours in excess of eight in a day) were thus present in 1945.

Section 201 was replaced by the Federal Employees Pay Act Amendments of 1954. The amendments entirely eliminated old section 201 of the Federal Employees Pay Act of 1945 dealing with overtime, and substituted new language:

Sec. 201. All hours of work officially ordered or approved in excess of 40 hours in any administrative workweek performed by officers and employees to whom this title applies shall be considered to be overtime work and compensation for such overtime work, except as otherwise provided for in this Act, shall be at the following rates:

(1) For each officer and employee whose basic compensation is at a rate which does not exceed the minimum scheduled rate of basic compensation provided for grade GS–9 ... the overtime hourly rate of compensation shall be an amount equal to one and one-half times the hourly rate of basic compensation of such officer or employee, and

---

5. The Act also raised the cap on the hourly rate of basic pay used to compute overtime pay to GS–10, Step 1. *See* S.Rep. No. 1187, 89th Cong., 2d Sess. 2, 15–16 (1966).

6. There had been a very limited number of earlier statutes granting overtime to particular classes of employees. For example, in 1940, Congress directed that mechanics and laborers working for the War Department be given overtime pay. Pub.L. No. 703, Ch. 508, § 4(b), 54 Stat. 714 (1940). The language used in that provision appears to have served as a model for the 1945 statute:

[T]he regular work hours of laborers and mechanics employed by the War Department ... shall be eight hours per day or forty hours per week ... *Provided,* That ... such hours may be exceeded, but compensation for employment in excess of forty hours in any workweek, computed at a rate not less than one and one-half times the regular rate, shall be paid....

7. In 1986, Congress changed the divisor to 2,087 for pay periods commencing on or after March 1, 1986. 5 U.S.C. § 5504(b)(1) (1988); Act of April 7, 1986, Pub.L. No. 99–172, 100 Stat. 82, 334.

all of such amount shall be considered premium compensation.

(2) For each officer and employee whose basic compensation is at a rate which exceeds the minimum scheduled rate of basic compensation provided for grade GS–9 ... the overtime hourly rate of compensation shall be an amount equal to one and one-half times the hourly rate of such minimum scheduled rate of basic compensation, and all of such amount shall be considered premium compensation.

The 1954 Amendments thus retained the 1945 Act's 150 percent multiplier to be applied to the employee's hourly rate of basic pay. However, the new section dealing with overtime replaced the phrase "in addition to their basic compensation" with the language "and all of such amount shall be considered premium compensation." Because overtime came into play only for hours in excess of 40 per week, there was no potential overlap between overtime premium pay and basic pay.

The Federal Salary and Fringe Benefit Act of 1966 expanded the definition of "overtime work" to include hours of work "in excess of 8 hours in a day." The other provisions—that "compensation of such overtime work ... shall be ... one and one-half times" the hourly rate of basic compensation, "and all of such amount shall be considered premium compensation"—remained in place, thus setting the stage for the present controversy.

The plain import from this chronology is that the language upon which plaintiffs place all their reliance—"and all that is premium pay"—could not possibly have been intended, at least at the time it was adopted, to mandate payment of both basic pay and full (150 percent) overtime pay for the same hours of work, for the simple reason that that possibility did not exist at the time. The three elements of plaintiffs' claim—the entitlement to basic pay, the entitlement to overtime for certain hours,

and the admonition that the latter is a premium—were not simultaneously cobbled together by Congress. While the phrases all must be read together today, harmoniously if possible, it is simply too much to suggest, as plaintiffs do, that this alignment was manifestly the result of a sentient act by Congress.

Plaintiffs make much of the fact that the history surrounding the adoption of the various pieces of legislation does not reflect a clear intent contrary to their reading of section 5542. That is correct. It is equally correct that there is no hint in the reports or contemporaneous debate that Congress understood that the result urged by plaintiffs would obtain.

It adds nothing to the weight of plaintiffs' argument to point to the numerous references in the legislative history to generalized comments to the effect that overtime is to be paid at a "full" or "true" rate of 150 percent,[8] particularly when it is drawn from sources prior to 1966. The concern expressed in a 1951 report for the need for a full overtime rate, for example, had nothing to do with ensuring 250 percent of basic pay.[9] At that time, overtime coverage was severely restricted by salary and grade scale. The reference highlighted by plaintiffs was to the desire to expand coverage to more employees and to raise ceilings.

Plaintiffs argue that the change in 1954 from the previous language of section 201 "employees to whom this title applies shall, in addition to their basic compensation ..." to "and all of such amount shall be considered premium compensation" strengthens the inference that "no part of the compensation for overtime work would be composed of overtime pay." Brief of February 25, 1991, p. 14. Quite the contrary is true. If section 5542 still read as section 201 did, then there would be little question that overtime would be completely independent of basic pay.

---

8. *See, e.g.,* S.Rep. No. 1992, 83d Cong., 2d Sess. 2, 7 (1954); S.Rep. No. 1190, 83d Cong., 2d Sess. 3, 19–20 (1954); 91 Cong.Rec. 6713 (1945).

9. H.R.Rep. No. 843, 82d Cong., 1st Sess. 5 (1951). This report accompanied S. 354, which, though not adopted that year, was similar to the 1954 amendments.

The legislative history and caselaw cited by plaintiffs is not helpful to their case. It merely supports the proposition that employees are entitled to one and one-half times their basic rate of pay for overtime. There is no more reason to conclude that this supports plaintiffs' position than to conclude the contrary. Such language begs the question of whether "one and one-half times basic pay" is a grand total, or in addition to basic pay.

Plaintiffs also point to a wide range of federal pay statutes dealing with overtime which provide that the compensation for overtime hours in excess of 8 in a day or 40 in a week is to be calculated at 150 percent of basic pay. *See* 41 U.S.C. § 328(a) (1982) (Laborers or Mechanics Employed by Federal Contractors); 41 U.S.C. §§ 35(c), 40 (Public Contracts Act) (1988); 38 U.S.C. § 4107(e)(5) (1988) (Veterans Administration Nurses); 5 U.S.C. § 5544 (Wage Board Employees). Plaintiffs contend that the legislative history and caselaw under these statutes suggests that overtime for hours over 8 in a day should be compensated at 150 percent of an employee's hourly rate of basic compensation in addition to 100 percent of basic pay already received. The court makes two observations. First, with one exception, there is no direct support in the materials cited for that proposition. The most that can be drawn from the statutory materials and cases cited by plaintiffs is that employees covered by those statutes are entitled to 150 percent of an employee's hourly rate of basic compensation for hours worked in excess of 8 in a day or 40 in a week. That conclusion skips over the issue raised here, however. Defendant does not deny that overtime is calculated based on 150 percent of basic pay. Plaintiffs' materials do not address the relevant question, namely, whether they should receive 150 percent of their basic rate of pay for hours worked *in addition to* basic pay for the same hours.

The court notes, second, that the exception, a provision of one of the referenced statutes, the Veterans Health Care Expansion Act of 1973, Pub.L. No. 93–82, 87 Stat. 188, codified at 38 U.S.C. § 4107, uses language significantly different from section 5542. Section 4107 specifically adds the overtime premium of 150 percent of basic pay "to the basic compensation."

In an errata sheet to their supplemental brief, plaintiffs also cite the following regulation in support of their argument:

An employee entitled to overtime pay under this subpart and overtime pay under § 550.113 of this chapter, or under any other authority, shall be paid under whichever authority provides the greater overtime entitlement in the workweek. This overtime pay shall be paid in addition to all pay, other than overtime pay, to which the employee is entitled under title 5, United States Code, or any other authority.

5 C.F.R. § 551.513. According to plaintiffs, the language "in addition to" in the last sentence means that overtime pay is computed separately from, and without consideration of, other pay, and subsequently is to be added to all other pay. This regulation is inapposite. The regulation was issued as part of OPM's regulations implementing the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1988). 45 Fed.Reg. 85,659, 85,666 (Dec. 30, 1980). These regulations make clear that Title 5 and the FLSA "are to be administered separately and independently, with [employees covered by the FLSA] being paid under whichever law provides them with the greater overtime pay benefit." 45 Fed.Reg. 85,661. The regulation was not intended to address the methodology for computing premium pay under 5 C.F.R. § 550.142. Premium pay is to be calculated under 5 C.F.R. Part 550, while FLSA overtime pay is addressed in 5 C.F.R. Part 551. Plaintiffs are not entitled to FLSA overtime pay, and therefore, part 551 is not directly applicable in determining the amount of premium pay due to plaintiffs.

Moreover, as defendant points out, the FLSA has been construed in support of its construction of section 5542 in at least two decisions applying the FLSA overtime provisions to firefighters and security guards. *See Zumerling v. Devine,* 769 F.2d 745 (Fed.Cir.1985); *Brooks v. Weinberger,* 730 F.Supp. 1132, 1140

(D.D.C.1989). Calculation of overtime for those employees was controlled by section 7(k) of the FLSA. 29 U.S.C. § 207(k) (1988). The discussion in those cases is helpful[10] because the courts were faced with claims that would have resulted in the addition of 150 percent for overtime pay to basic pay.[11] In *Zumerling* the court held that, under the FLSA, an employee is only entitled to receive "in total one and one-half times the regular rate at which he is employed" for hours of overtime. 769 F.2d at 752. In reaching this holding, the court stated, "Section 7(k) only mandates that a fire fighter receive in total one and one-half times his regular rate for each overtime hour, it does not indicate that he must receive this amount in addition to the overtime compensation he already receives." *Id.* In *Brooks,* the court found that plaintiffs' FLSA formula would pay them two and one-half times their regular rate of pay for overtime hours, and thus, "exceeds the requirement of compensation of not less than one and one-half times the regular rate." 730 F.Supp. at 1140.

Although the parties point to no court decisions directly addressing the controversy at bar, the Comptroller General has issued an opinion supportive of defendant's position. The Comptroller determined that, because an employee is entitled to basic pay for work performed during the 40–hour basic workweek, "the actual overtime pay [for hours worked in excess of 8 in a day but less than 40 in a week] is the difference between the basic rate of pay and the overtime rate for those hours." *Matter of John Nyberg,* 65 Comp.Gen. 273, 279 (1986). No other explanation is provided.[12]

In sum, plaintiffs have not demonstrated to the court that OPM abused its discretion by determining that the premium for daily overtime hours up to the fortieth hour of work in a week should be calculated at one-half times each plaintiff's hourly rate of basic pay. OPM's approach to interpreting and applying section 5542 is reasonable, avoids what would otherwise be an anomalous result, and is not inconsistent with the statutes, regulations, or intent of Congress. As the Supreme Court recently taught, "Judicial deference to an agency's interpretation of ambiguous provisions of the statutes it is authorized to implement reflects a sensitivity to the proper roles of the political and judicial branch," *Pauley v. Bethenergy Mines,* — U.S. —, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991), particularly where legislation "has produced a complex and highly technical regulatory program," *id.* at 2534. *See also Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Nor is it necessary that the agency's "construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Id.* (quoting *Unemployment Compensation Comm'n v. Aragan,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)). *See also Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

The court concludes that it was not improper for defendant to credit plaintiffs for the basic pay they had already received in calculating the amount of overtime pay they were entitled to under section 5542.

---

10. The FLSA is to be administered so as to assure consistency with Title 5. *See Riggs v. United States,* 21 Cl.Ct. 664, 668 (1990).

11. The plaintiffs in *Zumerling* were federal fire-fighters and were entitled to overtime compensation pursuant to 29 U.S.C. § 207(k). Under section 207(k), federal firefighters who work a regular scheduled tour of duty of 144 hours in a 2–week pay period are entitled to receive compensation in the form of: (1) the pro rata part of their annual basic pay and annual premium pay under Title 5; and (2) overtime pay for 38 hours calculated at one and one-half times their regular rate of pay. *See Lanehart v. Horner,* 818

F.2d 1574, 1576 (Fed.Cir.1987). In *Brooks,* plaintiffs were security guards who were entitled, pursuant to section 207(k)'s provisions for law enforcement officers, to straight time rate of pay for hours in excess of 85.5 in a 2–week period as well as overtime compensation for those hours calculated at one and one-half times their regular rate of pay.

12. Plaintiffs' disagreement with the calculations in *Nyberg* arises merely from their assumption that overtime (one and one-half times basic pay) is added to basic pay.

Section 5542 only mandates that an employee receive in total one and one-half times his basic rate of pay for each overtime hour, it does not direct that he must receive this amount in addition to the overtime compensation already received. Here, plaintiffs received their basic rate pay up to 40 hours of actual work. By receiving an additional one-half pay for hours of actual work in excess of eight in a day, plaintiffs receive in total one and one-half times the basic rate, as the statute mandates. Applying this methodology, plaintiffs received more by way of annual premium pay for regularly scheduled standby duty than they would otherwise receive under Title 5 for their hours of actual work. *See infra* n. 2. Thus, no liability attaches.

B. *The Second Issue.*

Having found that the defendant is not liable under the individual premium pay statutes, resolution of any factual dispute pertaining to calculation of overtime compensation under section 5542 is not necessary.

### IV. CONCLUSION

For the reasons expressed above, the defendant is not liable under the individual premium pay statutes. Plaintiffs are therefore not entitled to any recovery. The Clerk is directed to enter judgment dismissing the complaint. No costs.