**James E. DeCOSTA, Vinson D. Thomas, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 91–5147.

United States Court of Appeals, Federal Circuit.

March 3, 1993.

Ira M. Lechner, Katz & Ranzman, Washington, DC, argued for plaintiffs-appellants.

Domenique Kirchner, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director.

Before MICHEL, PLAGER, LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

James E. DeCosta and Vinson D. Thomas sued their employer, the United States, in the United States Claims Court[1] under the Back Pay Act, 5 U.S.C. § 5596 (1988), asserting entitlement under certain provisions of the Federal Employees Pay Act to additional compensation for regularly scheduled overtime work in excess of eight hours per day but less than 40 hours per week. 5 U.S.C. §§ 5542, 5545 and 5546 (1988). The Claims Court held that appellants are not entitled to the claimed additional compensation because the Office of Personnel Management's (OPM's) interpretation of the overtime pay provision of the Federal Employees Pay Act, 5 U.S.C. § 5542, used to calculate the amounts paid them is reasonable, and is consistent with the intent of Congress. *DeCosta v. United States*, 23 Cl.Ct. 582, 590 (1991). Because we agree OPM's interpretation is reasonable, we affirm the dismissal of appellants' complaint.

## I. BACKGROUND

Appellants, James E. DeCosta and Vinson D. Thomas, are employed by the United States as fire fighters at Andrews Air Force Base. As assistant chiefs for operations, appellants each work three alternating 24-hour shifts per week. During each 24-hour shift, each appellant performs, on average, a total of 12 hours and 40 minutes of actual work. *DeCosta v. United States*, 22 Cl.Ct. 165, 177 (1990).

Appellants are rated as Grade 10, Step 7 on the General Schedule, and earn an annual rate of basic pay of $32,648. In addition to this basic pay, appellants also receive premium pay for the hours of actual work they perform in excess of eight hours per day. That premium pay is calculated as *"standby* premium pay" in an amount equal to 25 percent of their basic pay. 5 U.S.C. § 5545(c)(1).[2]

Appellants brought suit in the Claims Court claiming that the compensation that they received for the hours of work they performed in excess of eight hours per day but less than 40 hours per week was inadequate under the overtime provisions of the Federal Employees Pay Act, (the "Act") 5 U.S.C. §§ 5542, 5545 and 5546. In particular, appellants claimed that because "standby" pay can be paid in lieu of the other types of premium pay authorized by the Act—overtime pay, 5 U.S.C. § 5542; nighttime pay, 5 U.S.C. § 5545(a); Sunday pay, 5 U.S.C. § 5546(a); and holiday pay, 5 U.S.C. § 5546(b)—only if it is greater than the sum total of the other types of premium pay, 5 U.S.C. § 5545(c), 5 C.F.R. §§ 550.141

---

1. As of October 29, 1992, the United States Claims Court became the "United States Court of Federal Claims," pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992).

2. Pursuant to 5 U.S.C. § 5545(c)(1), the basic pay amount used for this calculation is limited to the basic pay at a rate of GS–10.

and 550.142 (1991), they should receive the other types of premium pay instead of standby pay. Appellants argue that the sum total of the other types of premium pay would be greater than standby pay if OPM properly interpreted the overtime premium pay provision, 5 U.S.C. § 5542. The parties do not dispute the amount of premium pay to which appellants are entitled for nighttime, Sunday, or holiday work. 23 Cl.Ct. at 584–85 & n. 2. The parties dispute only the amount of overtime premium pay to which appellants are entitled. Appellants assert that under a proper interpretation of the overtime premium pay provision, they would be entitled to the other types of premium pay instead of standby premium pay. However, appellants do not contest that if OPM's interpretation of the overtime premium pay provision is proper, they were appropriately paid based on standby premium pay.

The Claims Court ruled that appellants are not entitled to additional compensation and dismissed their complaint. The Claims Court held that OPM's interpretation of the overtime provision of the Act, 5 U.S.C. § 5542, is reasonable and is consistent with the congressional intent in passing the Act. 23 Cl.Ct. at 590.

## II. STANDARD OF REVIEW

 The dispositive issue in this appeal is the proper interpretation of the overtime premium pay statute, 5 U.S.C. § 5542. If the language of the section is unambiguous and the legislative history does not show that congressional intent was clearly contrary to the section's apparent meaning, that meaning of the statute controls, and there is nothing else for us to review.[3] *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed.Cir.1990). If however, the statutory language is ambiguous and the legislative history does not answer the precise question at issue, we must defer to the administering agency's interpretation if it is reasonable. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).[4] Therefore, we cannot disturb OPM's interpretation of 5 U.S.C. § 5542 unless it "'contravenes clearly discernible legislative intent' or is otherwise unreasonable." *True v. Office of Personnel Management*, 926 F.2d 1151, 1155 (Fed.Cir.1991) (quoting *Beneficial Corp. v. United States*, 814 F.2d 1570, 1574 (Fed.Cir.1987) (quoting *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986))).

## III. ANALYSIS

 The overtime premium pay provision states in part:

(a) For full time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40

---

**3.** Of course, legislative history cannot override the plain meaning of a statute, if the meaning is indeed plain. Legislative history can, however, shed light on the statute's meaning. That is why our court has held that even in the face of apparently unambiguous language, reference should be made to the legislative history to assure that no term was used other than for its ordinary meaning. *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed.Cir.1990) (stating that even when the ordinary "meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language'" (quoting *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir.1989) (emphasis added))).

**4.** In *Chevron,* the Supreme Court stated that an agency interpretation which is based on a "permissible construction of the statute" must be upheld. 467 U.S. at 843, 104 S.Ct. at 2782. In applying that standard, the court used a "reasonableness" test, stating: "[A] court may not substitute its own construction of a statutory provision for a *reasonable* interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. at 2782 (emphasis added). Subsequent Supreme Court cases follow the lead of *Chevron,* using "reasonable" and "permissible" interchangeably. *See, e.g., Pauley v. BethEnergy Mines, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2524, 2535, 115 L.Ed.2d 604 (1991); *Internal Revenue Serv. v. Fair Labor Relations Auth.,* 494 U.S. 922, 928, 110 S.Ct. 1623, 1627, 108 L.Ed.2d 914 (1990); *Massachusetts v. Morash,* 490 U.S. 107, 116, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989); *Pittston Coal Group v. Sebben,* 488 U.S. 105, 113, 109 S.Ct. 414, 419, 102 L.Ed.2d 408 (1988). Therefore, in this opinion, we discuss the agency's interpretation in terms of reasonableness.

hours in an administrative workweek, or ... in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates:

. . . .

(2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10, *and all that amount is premium pay.*

5 U.S.C. § 5542 (emphasis added). *See also* 5 C.F.R. § 550.113 (1991). Appellants argue that "[t]he phrase 'and all that amount is premium pay' clearly states that *no* portion of the overtime premium is to be composed of basic pay." Appellants assert, therefore, that they are entitled to their basic pay for the hours covered by this provision in addition to overtime pay for the same hours. Thus, for any given hour covered by the provision, appellants assert that they are entitled to two and one-half times their hourly rate of basic pay.

The underlined clause engenders confusion because it conflicts with the remainder of the provision which indicates that "the total amount of compensation for any overtime hour would be 150 percent of basic pay." 23 Cl.Ct. at 585. Because the clause does indeed render the statutory provision ambiguous, we must determine whether the legislative history of the Act sheds any light on its meaning.[5] *See Chevron,* 467 U.S. at 851, 104 S.Ct. at 2786. As the Claims Court appropriately noted, however, the legislative history does not address the meaning of the clause or how it should be read with the remainder of the provision. 23 Cl.Ct. at 586. Therefore, we must defer to the agency interpretation if it is reasonable. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

■ For several reasons, we conclude that the agency's interpretation is reasonable. First, the statutory provision at issue clearly defines an applicable hourly "rate" for the hours of work in question: "hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or ... in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following *rates....*" 5 U.S.C. § 5542(a) (emphasis added). The applicable rate is then expressed in terms of a multiple of the hourly rate of basic pay: "the overtime hourly *rate* of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee." *Id.* at § 5542(a)(1) (emphasis added). Because "the overtime hourly rate of pay" defines an amount to be paid for a given hour of work, under this provision there can be only one rate for any given hour. Therefore, the rate for each hour in excess of eight per day is either that set forth in the basic pay provisions, 5 U.S.C. §§ 5332 and 5504, or that set forth in the overtime provision, 5 U.S.C. § 5542. Because Congress expressed the overtime rate of pay in terms of the basic rate of pay, it is reasonable to conclude that the rate set forth in the overtime provision was intended to replace the basic rate of pay for each overtime hour. Likewise, it is reasonable to conclude that Congress did not intend the rates to be added. Indeed, if the separately provided rates for basic pay and for overtime were to be added together, the rate for each hour of overtime would no longer be the rate expressly set forth in the overtime provision, but instead, would be yet a third rate—two and one-half times basic pay—as advocated by appellants.

Second, where Congress intended separate pay entitlements to be added together, it explicitly provides for that in the statute. For example, with respect to each of the

---

**5.** Appellants' argument that the statute is unambiguous and therefore the court must give effect to the plain meaning of the words "and all that amount is premium pay" is unpersuasive because the plain meaning of the words simply does not answer the question of whether Congress intended employees to be entitled to two separate pay entitlements for the same hour of work.

*other* three premium pay provisions to which appellants assert entitlement, Congress made explicit its intention that the premium pay entitlement be added to the basic pay entitlement. Indeed, in the same section as the overtime provision at issue, the statute provides that an employee "is entitled to pay for nightwork at his rate of basic pay *plus* premium pay amounting to 10 percent of that basic rate." 5 U.S.C. § 5545(a) (emphasis added). Likewise, for work performed on Sunday, the statute provides that the employee "is entitled to pay for the entire period of service at the rate of his basic pay, *plus* premium pay at a rate equal to 25 percent of his rate of basic pay." *Id.* at § 5546(a) (emphasis added). Finally, for work performed on a holiday, the statute provides that the employee "is entitled to pay at the rate of his basic pay, *plus* premium pay at a rate equal to the rate of his basic pay." *Id.* at § 5546(b) (emphasis added).

It is therefore reasonable to conclude that if Congress had also intended overtime pay to be added to the basic pay, the statute would have language similar to that for nighttime, Sunday, and holiday work. The statute might have said that the employee "is entitled to overtime pay at the rate of his basic pay *plus* premium pay at a rate equal to 150 percent of his rate of basic pay." That it did not is, we believe, intentional and significant.

Third, and perhaps the most revealing as to the reasonableness of OPM's interpretation, is the absurd result obtained under appellants' interpretation of the statute. Appellants concede that under their interpretation, they would receive 250 percent of their basic pay for overtime hours in excess of 24 but less than 40 per week but would receive only 150 percent of their basic pay for overtime hours in excess of 40 per week. 23 Cl.Ct. at 586. Under OPM's interpretation, by contrast, appellants would receive 150% of their basic pay for every hour in excess of 24, be it greater or less than 40 per week. That result is not absurd, but sensible.

The Claims Court stated that "[p]laintiffs ... can point to no principled reason why this anomalous result should be permitted." *Id.* On appeal, appellants argue that it is not anomalous: "If Congress decided to pay employees a premium of 150 percent for working after 8 hours a day plus basic pay for a total of 250 percent, it unquestionably could do so." While it is true that Congress could have "unquestionably" done so, it did not. Instead, Congress enacted a provision which, compared to appellants' interpretation, is at best ambiguous and therefore raises a question of congressional intent. Accordingly, we must defer to OPM's reasonable interpretation.

Fourth, the magnitude of the absolute amounts asserted by appellants also, in contrast, suggests the reasonableness of OPM's interpretation. In this appeal, appellants assert entitlement, under their interpretation of section 5542, to individual premiums in amounts totalling $102,660.95 for the period of years at issue. 23 Cl.Ct. at 585 n. 2. By contrast, OPM's interpretation would entitle appellants to $42,546.99. *Id.* The statute requires a comparison of the sum total of other premium amounts with the standby premium amount in order to determine the amount to which the employee is entitled, 5 U.S.C. § 5545(c), as the employee is entitled to the greater amount. *See also* 5 C.F.R. §§ 550.141 and 550.142. In this case, the standby premiums equal $43,484.22. 23 Cl.Ct. at 585 n. 2. Because this number is close to OPM's other premium pay total, the comparison is meaningful. It would appear that under appellants' interpretation, the comparison would never be meaningful because the other premium pay entitlements would always be significantly higher. That the statutory provision requiring a comparison would be meaningless under appellants' interpretation, suggests that OPM's interpretation is reasonable.

Finally, while the legislative history does not answer the precise question at issue, it does shed some light on the reasonableness of OPM's interpretation of the statute. Because the Claims Court's opinion carefully sets out the evolution of the provision at issue, it does not bear repeating here. *See*

*id.* at 586–88. Judge Bruggink's conclusion, however, is worth emphasizing:

> The plain import from this chronology is that the language upon which plaintiffs place all their reliance—"and all that is premium pay"—could not possibly have been intended, at least at the time it was adopted, *to mandate payment of both basic pay and full (150 percent) overtime pay for the same hours of work,* for the simple reason that that possibility did not exist at the time.

*Id.* at 588. The fact that appellants' interpretation was not even possible at the time the pertinent language was added, while not dispositive of the meaning of the statute, certainly supports OPM's interpretation.

In further support of their argument that OPM's interpretation is unreasonable and that overtime premium pay should be paid in addition to basic pay, appellants rely on the definitions of "premium pay" and "rate of basic pay" set forth in 5 C.F.R. § 550.103(i), (j) (1991). "Premium pay" is defined as *"additional pay* authorized by subchapter V of chapter 55 of title 5, United States Code, and this subpart for overtime, night, holiday, or Sunday work, and for standby duty or administratively uncontrollable work." 5 C.F.R. § 550.103(i) (emphasis added). "Rate of basic pay" is defined as "the rate of pay fixed by law or administrative action for the position held by an employee before any deductions and *exclusive of additional pay of any kind." Id.* at § 550.103(j) (emphasis added).

While these definitions do suggest that premium pay may be authorized in addition to basic pay, they do not mean that the hourly *rates* of the various types of premium pay will always be *in addition to* the hourly *rate* of basic pay. As stated above, when a statute expresses a rate for a given hour in terms of a percentage of a different rate and does not expressly require combination of the two rates, it is reasonable to conclude that Congress did not intend that the rates be combined.

Moreover, neither of these definitions precludes OPM's interpretation, and both are consistent therewith. Under OPM's interpretation, the overtime premium pay is "in addition" to basic pay in the sense that it is greater than the pay to which appellants would otherwise be entitled. Likewise, under OPM's interpretation, the rate of basic pay is "exclusive of additional pay of any kind." For hours up to eight per day, the rate of basic pay is applicable and it does not include any additional pay. For hours beyond eight per day where additional pay is authorized, the "rate of basic pay" is no longer applicable, but is superseded by the overtime rate as explained above.

## IV. CONCLUSION

Because the overtime premium pay provision, 5 U.S.C. § 5542, is ambiguous and OPM's interpretation of it is reasonable, we must defer to that interpretation. Therefore, appellants were appropriately paid standby premium pay in lieu of the other types of premium pay, and they are not entitled to additional compensation. The Claims Court properly dismissed the complaint.

AFFIRMED.

PLAGER, Circuit Judge, concurs in the judgment.