**Linda Yae CONSOLO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 93–296 C.**

United States Court of Federal Claims.

June 23, 1994.

Gerald M. Sato, Westlake Village, CA, for plaintiff.

Dean L. Grayson, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen and Sharon Y. Eubanks, Washington, DC, for defendant.

## OPINION AND ORDER

TURNER, Judge.

This opinion addresses plaintiff's motion for summary judgment filed on October 28, 1993, and defendant's cross-motion for summary judgment filed on December 7, 1993. Oral argument on the dispositive motions was heard on March 9, 1994. We conclude that plaintiff's motion should be granted and that defendant's cross-motion should be denied.

### I

Linda Yae Consolo (plaintiff), by complaint filed on May 11, 1993, seeks review of the denial of her claim for $20,000 as compensation under the Civil Liberties Act of 1988, 50 U.S.C. app. §§ 1989b to 1989b–8 (1988). Congress adopted the Act as an acknowledgment of and an official apology for the fundamental injustice of the government's policy of evacuation, relocation, and internment of United States citizens and permanent resident aliens of Japanese ancestry during World War II. 50 U.S.C. app. § 1989(1) and (2). In addition, the Act established the Civil Liberties Public Education Fund from which eligible individuals are to receive financial compensation for the deprivation of their liberty and property as a result of the government's wartime actions. 50 U.S.C. app. § 1989b–3.[1]

Under the Act, the Attorney General is responsible for identifying, locating, and paying the sum of $20,000 as compensation to each "eligible individual." 50 U.S.C. app. § 1989b–4(a) and (b). Pursuant to 28 C.F.R. § 74.1–.17, the Attorney General, through the Office of Redress Administration, Civil Rights Division, Department of Justice (ORA), notifies individuals of their potential

---

1. For a report of litigation pursuant to an earlier statutory scheme—the Japanese–American Evacuation Claims Act of 1948—designed to make restitution for losses suffered by Japanese–American citizens of the United States in the period following the Japanese attack on Pearl Harbor on December 7, 1941, see *Sonoda v. United States*, 154 Ct.Cl. 130, 1961 WL 8731 (1961).

eligibility and verifies their claims upon receipt of certain background information. If the ORA determines that a person is ineligible, that person has the right to seek reconsideration of such a determination from the Assistant Attorney General for Civil Rights. A claimant may appeal any adverse decision by the Assistant Attorney General to the Court of Federal Claims. *Suzuki v. United States,* 29 Fed.Cl. 688, 690 (1993); 50 U.S.C. app. § 1989b–4(h).

## II

There are no material facts in dispute. Plaintiff is a United States citizen of Japanese ancestry born on April 11, 1943, in Fielding, Utah. Plaintiff's parents relocated to Utah from their home in Los Angeles, California in March 1942, following Public Proclamation No. 1, in which the Federal West Coast Military Command designated California as an area from which all persons of Japanese descent would be excluded. Pl. Separate Statement of Facts, at 1–2. Plaintiff and her parents were prohibited by law from returning to their home in Los Angeles during this period. After the military restrictions were lifted, plaintiff and her parents returned to Los Angeles where plaintiff has since resided. Complaint at 3.

In 1992, the ORA denied plaintiff's claim for compensation, concluding that she was not eligible because her "losses were not the result of government action as defined in the Act and the implementing regulations." Administrative Record at 69–70. The Assistant Attorney General for Civil Rights subsequently affirmed the ORA's decision in a final agency decision, stating:

Under the regulations implementing the Act, children who were 'born in assembly centers, relocation camps and internment camps' are eligible for redress compensation. 28 C.F.R. 74.3(b)(7); 54 Fed.Reg. 34157, 34160 (August 18, 1989). However, the regulations 'do not include as eligible children born after their parents had voluntarily relocated from prohibited military zones, or from assembly centers, relocation camps, or internment camps.' 54 Fed.Reg. at 34160. Therefore, because Ms. Consolo was born after her parents relocated from

a prohibited military zone, she is not an 'individual ... confined, held in custody [or] relocated' within the meaning of the Act. 50 U.S.C.App. 1989b–7(2)(b).

Administrative Record at 118–119.

Plaintiff argues that she was both relocated and deprived of liberty during the evacuation, relocation, and internment period, and, therefore, defendant's denial of her compensation claim is arbitrary, capricious, an abuse of discretion, and not in accordance with law. Complaint at 2–5 and plaintiff's brief in support of motion for summary judgment (Pl. Br.) at 10–15. Defendant maintains that plaintiff is not an eligible individual as defined by the Act because she was neither relocated nor suffered a deprivation of liberty for which Congress intended to provide compensation. Defendant's brief in opposition to plaintiff's motion for summary judgment and cross-motion for summary judgment (Def.Br.) at 10–12. We have jurisdiction pursuant to 50 U.S.C. app. § 1989b–4(h).

## III

### A

■ This court has authority to review the Assistant Attorney General's denial of compensation "upon the administrative record" and shall set the denial aside as unlawful if the denial "is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 50 U.S.C. app. § 1989b–4(h)(1); *see Suzuki* at 691.

Although we recognize that an agency's decision is entitled to substantial deference, *Doty v. United States,* 24 Cl.Ct. 615, 626 (1991) (citing *Rogers v. United States,* 14 Cl.Ct. 39, 46 (1987), *aff'd,* 861 F.2d 729 (Fed. Cir.1988), *cert. denied* 490 U.S. 1034, 109 S.Ct. 1930, 104 L.Ed.2d 403 (1989)), we "should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms." *Estate of Cowart v. Nicklos Drilling Co.,* — U.S. —, —, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). In reviewing the Department of Justice's (DOJ) construction of the Act, we must first look to whether Congress has spoken directly to the precise question at issue, which is whether a plaintiff who was

born after her parents' "voluntary" relocation is an eligible individual. If we determine that the language of the Act is unambiguous and that the intent of Congress is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). *See Skinner v. Brown,* 27 F.3d 1571, 1572–73, 1575–76 (Fed.Cir.1994).

### B

This court recently addressed the issue of whether individuals born after their parents' "voluntary" relocation from prohibited military areas are eligible for compensation under the Act. In *Ishida v. United States,* 31 Fed.Cl. 280 (1994), plaintiff challenged DOJ's denial of his compensation claim as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.[2] *Id.* at 284. Another judge of the court, deferring to DOJ's interpretation of the Act, held that the determination that the clause "otherwise deprived of liberty" does not extend to individuals born after their parents relocated is a reasonable interpretation of Congress's intent and thus is in accordance with law. As explained below, we conclude that DOJ's interpretation is not consistent with the Act. We are mindful that the dispositive legal issue in *Ishida* and in the instant case is identical, yet we reach an opposite result.

**2.** Plaintiff in *Ishida* also challenged the constitutionality of DOJ's regulations.

**3.** The laws and orders referred to are:

(I) Executive Order Numbered 9066, dated February 19, 1942; .

(II) the Act entitled 'An Act to provide a penalty for the violation of restrictions or orders with respect to persons entering, remaining in, leaving, or committing any act in military areas or zones', approved March 21, 1942 (56 Stat. 173); or

(III) any other Executive order, Presidential proclamation, law of the United States, directive of the Armed Forces of the United States, or other action taken by or on behalf of the United

### IV

### A

Pursuant to the Act, the Attorney General is responsible for paying the sum of $20,000 to each "eligible individual." The Act states that

(2) the term 'eligible individual' means any individual of Japanese ancestry who is living on the date of the enactment of this Act [Aug. 10, 1988] and who, during the evacuation, relocation, and internment period [December 7, 1941 to June 30, 1946]—

(A) was a United States citizen or a permanent resident alien; and

(B)(i) was confined, held in custody, relocated, *or otherwise deprived of liberty* or property *as a result of*—[the laws and orders in effect during that period].[3]

50 U.S.C. app. § 1989b–7(2) (emphasis added).[4]

There is no dispute that plaintiff satisfies the threshold requirements of the statute. Plaintiff is an individual of Japanese ancestry living on the date of the enactment of the Act, and during the evacuation, relocation, and internment period was a United States citizen.

### B

Plaintiff asserts that she satisfies the remaining requirements of eligibility in two ways. First, plaintiff alleges that she was relocated as a result of the laws and orders in effect during that period. Plaintiff contends that as an infant she could not have a domicile independent of the domicile of her parents and, therefore, was "relocated" to

States or its agents, representatives, officers, or employees, respecting the evacuation, relocation, or internment of individuals solely on the basis of Japanese ancestry.

50 U.S.C. app. § 1989b–7(2)(B).

**4.** In 1992, the Act was amended to expand the criteria for redress eligibility to include Americans who are not of Japanese descent but were spouses or parents of Japanese–Americans and were evacuated, relocated and interned with those Japanese–American relatives. *See,* Civil Liberties Act Amendments of 1992, Pub.L. 102–371, 106 Stat. 1167 (1992); H.R.Rep. No. 863, 102d Cong., 2d Sess. at 5 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1030, 1033.

the same extent as her parents because all three were excluded from California. Pl.Br. at 14–15. Although at birth plaintiff acquired the domicile of her parents, which throughout the evacuation period had remained California, *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989) (stating that where minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents), plaintiff herself was not relocated. We cannot equate exclusion with relocation because "words in a statute are to be given their ordinary and common meaning." *In re Canadian Pacific Ltd.,* 754 F.2d 992, 994 (Fed.Cir.1985) (citing *Banks v. Chicago Grain Trimmers Assoc., Inc.,* 390 U.S. 459, 465, 88 S.Ct. 1140, 1144–45, 20 L.Ed.2d 30 (1968)). To "relocate" is "to move to a new location." *Webster's New World Dictionary* 1134 (3d College ed. 1988). Plaintiff was born in Utah, not in California, therefore while she was excluded from California, she was not, in the ordinary sense of the word, "relocated" to Utah.

### C

 Plaintiff's second allegation in support of eligibility is that she was deprived of liberty, including her right to return to her domicile, as a result of the laws and orders in effect during the relevant period. Pl.Br. at 10–14. Defendant does not dispute that plaintiff was prohibited by law from returning to her domicile during the evacua-

tion, relocation, and internment period. However, defendant maintains that because plaintiff was born after her parents had relocated to Utah, she herself was not evacuated, relocated, or interned, and therefore, she did not suffer a deprivation of liberty for which Congress intended to provide compensation. Def.Br. at 11–12. In effect, defendant contends that compensation for deprivation of liberty under the Act is limited to those who were evacuated, relocated, or interned during that period.[5] *Id.* The Act does not support such an interpretation for it would render the phrase "or otherwise deprived of liberty or property" superfluous. Common rules of statutory construction encourage a reading that avoids rendering superfluous any part of a statute. *Quaker State Oil Refining Corp. v. United States,* 24 Cl.Ct. 64, 71 (1991), *aff'd,* 994 F.2d 824 (Fed.Cir.1993).

Contrary to defendant's assertion, the plain and unambiguous language of the Act does include as eligible those individuals who have been deprived of liberty or property *as a result* of the laws and orders which caused the evacuation, relocation, or internment of individuals of Japanese ancestry, as well as those individuals confined, held in custody, or relocated. By including the phrase "or otherwise deprived of liberty" as a basis for eligibility, Congress has ensured that those individuals of Japanese ancestry who were "deprived of liberty" will be compensated even though they were not confined, held in custody, or relocated.[6] To this extent, the

---

**5.** Defendant submits that the denial of compensation to individuals born after their parents had "voluntarily" relocated "constitutes a reasoned conclusion that such individuals were not as directly affected by the Government's internment policies as were others." Def.Reply at 6–7. We question whether the children born after their parents "voluntarily" relocated were not as directly affected by the government's actions as were the children born in the various detention centers. This doubt exists in light of the fact that the main reason for initiating the mandatory evacuation was the failure of the "voluntary" evacuation. Japanese–Americans were forced to move from prohibited areas with no provision for housing or means of livelihood and were faced with public hostility in the interior states. Mandatory evacuation was to ensure an orderly, supervised, and thoroughly controlled evacuation with adequate provision for the protection of the evacuees as well as their property and to shield

them from intense public hostility. *See Personal Justice Denied: Report of the Commission on Wartime Relocation and Internment of Civilians* (1982) at 103.

**6.** DOJ's published interpretation of the Act states:

It is clear from the findings by the Commission on Wartime Relocation of Civilians that the evacuation, relocation or internment of the Japanese Americans and Japanese resident aliens was not a single uniform action. Indeed, ... Congress specifically included language to ensure that the Act covered individuals confined, held in custody, relocated, or 'otherwise deprived of liberty or property' as a result of any action taken by the United States solely on the basis of Japanese ancestry during the period from December 7, 1941 to June 30, 1946. Therefore, in addition to persons de-

Act provides compensation for those who suffered deprivations of liberty such as *exclusion* from their domicile as a result of the government actions.[7]

The inclusion of individuals such as the plaintiff as eligible individuals under the Act is in fact consistent with the recommendations of Congress's Commission on Wartime Relocation and Internment of Civilians (Commission).[8] The Commission recommended

> that Congress establish a fund which will provide personal redress to those who were excluded.... The fund should be used, first, to provide a one-time per capita compensatory payment of $20,000 to each of the approximately 60,000 surviving persons *excluded* from their places of residence [or presumably their domicile] pursuant to Executive Order 9066. [Emphasis added.]

*Personal Justice Denied Part 2; Recommendations: Report of the Commission on Wartime Relocation and Internment of Civilians* (1983) at 9. Indeed, the opening statement of DOJ's published interpretation of the Act acknowledges that the "Civil Liberties Act of 1988 enacts into law the recommendations of the Commission on Wartime Relocation and Internment of Civilians established by Congress in 1980." 54 Fed.Reg. 34157 (August 18, 1989); Def.Br., Appendix at 27.

DOJ's regulations implementing the Act do not construe the definition of an eligible individual as narrowly as defendant now urges us to do. The regulations have deemed eligible other classes of individuals deprived of liberty or property even though they had not

been physically evacuated, relocated or interned.[9] DOJ's inclusion of these individuals as eligible, like the inclusion of plaintiff as eligible, is consistent with the plain and unambiguous language of the Act.

**D**

We conclude that plaintiff has satisfied the conditions of eligibility as set forth in the Act. She is an individual of Japanese ancestry and was living on the date of the enactment of the Act. During the evacuation, relocation, and internment period she was a United States citizen and was, by being excluded from her domicile, deprived of liberty as a result of the laws and orders in effect during that period. Therefore, we conclude that plaintiff is entitled to compensation under the Act.

**V**

Based on the foregoing, plaintiff's motion for summary judgment is granted and defendant's cross-motion is denied. Accordingly, it is ORDERED as follows:

1. The Attorney General's denial of plaintiff's claim for compensation is hereby set aside, *see* 50 U.S.C. app. § 1989b–4(h).

2. Judgment shall be entered in favor of plaintiff in the amount of $20,000 to be paid from the Civil Liberties Public Education Fund pursuant to 50 U.S.C. app. §§ 1989b–3 and 1989b–4.

Pursuant to RCFC 54(d) costs shall be allowed to the plaintiff ("the prevailing party").

---

prived of liberty or property solely on the basis of Japanese ancestry by the placement in relocation centers, ... or in camps ..., others who were deprived of liberty by other Government actions would also be eligible. 54 Fed.Reg. 34158–59 (August 18, 1989), Def.Br., Appendix at 28–29.

7. The only individuals specifically excluded from receiving compensation under § 1989b–7 are those who relocated to a country with which the United States was at war during the period from December 7, 1941 to September 2, 1945. 50 U.S.C.App. § 1989b–7(2). This was plaintiff's situation in *Suzuki v. United States*, 29 Fed.Cl. 688 (1993).

8. The Commission was established by act of Congress in 1980 to review the circumstances of the

government's wartime conduct toward Americans of Japanese ancestry and to recommend appropriate remedies. Pub.L. No. 96–317, 94 Stat. 964, § 2 (1980).

9. For instance, the regulations deem eligible individuals who were members of the Armed Forces of the United States at the time of the evacuation and internment period: 1) whose domicile was in a prohibited zone and as a result of the government action lost property; or 2) were prohibited by government regulations from visiting their interned families or forced to submit to undue restrictions amounting to a deprivation of liberty prior to visiting their families. 28 C.F.R. § 74.3(b)(4) and (5).

In light of the foregoing, plaintiff's motion filed May 13, 1994 for leave to submit further written and oral argument regarding the *Ishida* case is DENIED AS MOOT.