**Sharon M. TANIHARA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94–404 C.**

United States Court of Federal Claims.

Feb. 27, 1995.

Gerald M. Sato, Westlake Village, CA, for plaintiff.

Stephanie Jackson, U.S. Dept. of Justice, Washington, DC, for defendant.

## OPINION

HODGES, Judge.

The Civil Liberties Act of 1988, 50 U.S.C. app. § 1989b to 1989b–9 (1993), provides payments to individuals of Japanese ancestry who were deprived of liberty or property as a result of actions taken by the United States Government during World War II. Plaintiff's application for compensation in the statutory amount of $20,000 was denied by the Department of Justice. We must affirm the Justice Department's decision and deny plaintiff's motion for summary judgment.

## STATUTORY AND REGULATORY HISTORY

President Franklin D. Roosevelt issued an executive order delegating authority to military commanders to exclude "any and all persons" from designated areas in order to provide security against espionage and sabotage. Exec. Order No. 9066, 7 Fed.Reg. 1407 (1942). The entire Pacific Coast ultimately was determined to be susceptible to

espionage, and all persons of Japanese descent were excluded from the area.

The United States began with a "voluntary" program that allowed people who left the West Coast to relocate to other states. Later, the Government instituted a mandatory relocation program. Japanese–Americans still located in the military zones were required to report to holding centers and later they were sent to internment camps.

The Supreme Court upheld Executive Order 9066 in *Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Mr. Korematsu was compelled to leave his home in California. The Court applied a strict scrutiny standard, and found no unconstitutional deprivation of liberty.

Although *Korematsu* has not been overruled, in 1948 Congress afforded some relief to Japanese–Americans who were relocated and interned during World War II. The American–Japanese Evacuation Claims Act permitted claims for particular losses or damage to property, and for injury to physical or mental health. 50 U.S.C. app. § 1981–1987 (1993). The value of the American–Japanese Evacuation Claims Act to Japanese–Americans was limited because of the Act's elaborate requirements for proof of loss. *Personal Justice Denied Part 2; Recommendations: Report of the Commission on Wartime Relocation and Internment of Civilians* at 7 (1983).

The Commission on Wartime Relocation and Internment of Civilians recommended that Congress and the President recognize the grave injustice that had occurred and offer "the apologies of the nation for acts of exclusion and detention." *Id.* at 8. The Commission recommended that monies be appropriated to establish a special foundation, but acknowledged that "no fund would be sufficient to make whole again the lives damaged by the exclusion and detention." *Id.* at 9.

By enacting the Civil Liberties Act of 1988, Congress awarded a symbolic $20,000 restitution to eligible individuals. "Eligible individual" is defined as

> any individual of Japanese ancestry who is living on the date of the enactment of this Act ... and who, during the evacuation, relocation, and internment period [December 7, 1941 through June 30, 1946] ... was a United States citizen ... and ... was confined, held in custody, relocated, or otherwise deprived of liberty or property as a result of ... [government actions].

50 U.S.C. app. § 1989b–7(2).

Regulations promulgated by the Attorney General mirror the statutory language, defining eligibility as follows:

> An individual is found to be eligible if such an individual ... [w]as confined, held in custody, relocated, or otherwise deprived of liberty or property as a result of [government actions].

28 C.F.R. § 74.3(a)(4)(i).

Individuals deemed to have suffered a loss include persons who were born to parents of Japanese ancestry who were evacuated, relocated or interned. 28 C.F.R. § 74.3(b). These individuals are eligible only if they were "born in assembly centers, relocation centers, or internment camps." 28 C.F.R. § 74.3(b)(7). Individuals not deemed eligible under paragraph (b) may nevertheless qualify on a case-by-case basis. 28 C.F.R. § 74.3(c).

The regulations do not include a specific provision making eligible persons born to interned or relocated parents of Japanese ancestry who were not born in assembly centers, relocation centers or internment camps. Defendant denied compensation to plaintiff because she was not confined, held in custody, or relocated during the period identified in the Civil Liberties Act.

**I**

Plaintiff's parents were United States citizens of Japanese ancestry who had been ordered to evacuate their home in Los Angeles. They were relocated to Jerome, Arkansas. Her parents lived in Jerome for three years, then decided to leave the camp because plaintiff's mother did not want her child to be born in an internment camp.

The War Relocation Authority granted plaintiff's parents indefinite leave to live in Chicago, and Sharon Tanihara was born there in June 1944. The Taniharas remained

under control of the War Relocation Authority during this period; their leave could have been revoked for any violation of the conditions. The Taniharas were not free to return to their home in California.

## II

■ Our standard of review is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 50 U.S.C. App. § 1989b–4(h)(1). An agency's construction of the law is entitled to deference, and its regulations are to be given controlling weight. The judicial function is exhausted once the court determines that the agency's decision has a rational basis. *See Doty v. United States,* 24 Cl.Ct. 615, 626 (1991); *Burlington Truck Lines v. United States,* 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

■ When we review an agency's interpretation of a statute that the agency is charged with administering, the interpretation is entitled to deference so long as it is reasonable and does not contravene clearly discernable legislative intent. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *DeCosta v. United States,* 987 F.2d 1556, 1558 (Fed.Cir. 1993).

■ The standard of review in the Civil Liberties Act is the same standard of review as in *Chevron.* Under the *Chevron* analysis, we must consider whether Congress has spoken on the precise issue. If the intent of Congress is clear, then a court and the agency must give effect to the unambiguously expressed intent. If Congress is silent or ambiguous on the specific issue, a court determines whether the agency interpretation is based on a permissible construction of the statute. The facts are not in dispute.

## III

■ The Department of Justice is the agency charged with the task of administering the Civil Liberties Act. It promulgated regulations under the Act, at 28 C.F.R. Part 74. Regulation § 74.3(b)(7) includes as "eligible," children who were born in internment camps. The regulation does not mention individuals born after their parents were relocated. An individual must have been born in a camp; those who were not born in internment camps are not included in this provision of the regulations.

Defendant's decision to deny compensation to plaintiff was not arbitrary or capricious; rather, it was based on a straightforward application of § 74.3(b)(7). Only children born in camps or centers are eligible. Thus, the issue is whether a regulation that does not include plaintiff is a permissible construction of the statute. We must determine whether the regulation comports with the Civil Liberties Act of 1988.

The Act does not address whether individuals born after their parents had relocated are eligible for compensation. It mandates compensation for anyone who was "confined, held in custody, [or] relocated." 50 U.S.C.App. § 1989b–7(2)(B)(i). These provisions are not ambiguous; the only permissible construction is to allow such individuals compensation. Hence, the regulation mandating compensation to individuals born in internment camps is correct because those individuals were confined and held in custody. 28 C.F.R. § 74.3(b)(7).

■ Plaintiff does not satisfy any of these requirements. *See Consolo·v. United States* 31 Fed.Cl. 447 (1994). The group to which plaintiff belongs—children born to relocated parents, yet not born in custody—is an identifiable group. Congress did not make such persons "eligible." Thus, Congress did not express an intent that plaintiff qualify as eligible for compensation.

Plaintiff does not assert that she was relocated, confined, or held in custody. She contends that defendant's denial of her claim was an incorrect interpretation of the statute because she was "deprived of liberty" as a result of the Government's policies. The Civil Liberties Act protects an individual who was "otherwise deprived of liberty or property" as a result of Executive Order 9066. 50 U.S.C. app. § 1989b–7(2)(B)(i).

■ This phrase "otherwise deprived of liberty" is ambiguous. It gives no indication of what factors establish eligibility under the

Act. Congress did not define deprivation of liberty other than the specified instances of custody and relocation. The next issue is what Congress intended when it used this broad phrase.

## IV

The legislative history shows no intent by Congress to include plaintiff as an individual eligible for compensation. Findings of the Commission on Wartime Relocation and Internment of Civilians focused mainly on the hardships suffered by individuals in the circumstances of plaintiff's parents. That is, persons who were excluded, removed, and detained by the United States during World War II. *Personal Justice Denied Part 2* at 5.

In § 1989 of the Civil Liberties Act of 1988, Congress expressly acknowledged the fundamental injustice of the evacuation, relocation, and internment of United States citizens during World War II. It offered a formal apology on behalf of the people of the United States. It also stated that the purpose of the Act was to make restitution to those persons of Japanese ancestry who were interned. The Act provided both an apology and compensation, but the compensation was intended only for certain individuals.

The foundation set up by Congress is not limitless. Not every person is eligible for the per capita $20,000 compensatory payment. Although more people suffered than are eligible for compensation under the Act, Congress chose to limit the group of eligible recipients. *Ishida v. United States*, 31 Fed. Cl. 280, 288 (1994). The Act incorporated "the Senate notion that compensation should only be paid to those most directly affected by internment." 134 Cong. Rec. § 19,117 (daily ed. July 27, 1988) (statement of Sen. Glenn).

The Department of Justice decided where to draw the eligibility line for compensation under this Act. It did so in light of the legislative history that focuses on the hardships suffered by those evacuated, relocated, and interned. It dictates compensation only to those "most directly affected." The Department of Justice did not define when a deprivation of liberty had occurred; it determined only that specific deprivations are to be compensated.

## V

The Commission on Wartime Relocation and Internment of Civilians recommended that

> Congress establish a fund ... to provide a one-time per capita compensatory payment of $20,000 to each of the approximately 60,000 surviving persons *excluded from their places of residence* pursuant to Executive Order 9066.

*Personal Justice Denied Part 2* at 9. (Emphasis added.)

■ Plaintiff was not excluded from her residence in Illinois as a result of the Government's actions. Her specific deprivation of liberty was exclusion from her legal domicile in California. Plaintiff notes that under the holding of *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989), her domicile as a minor was that of her parents. She contends that though her parents were forced to leave their home in California, they intended to return and did not give up their California domicile. Because her domicile also was in California, plaintiff claims that she is entitled to compensation because she was excluded from her domicile. For the purpose of this ruling, we assume that plaintiff's parents did retain their California domicile.

Plaintiff contends that the legislative history supports redress for those individuals who were excluded from their domiciles, and that "domicile" was assumed by Congress to be equivalent to "residence" in the phrase "excluded from their places of residence." It is not apparent from the legislative history that Congress intended to compensate a person based solely on that individual's exclusion from domicile. Plaintiff's parents were excluded from their domicile, but domicile is not relevant to their eligibility. They are eligible because they were evacuated, interned, and relocated.

"Domicile" and "residence" have different meanings. The distinction between the terms has been explained by the Supreme Court: " 'Domicile' is not necessarily synony-

mous with 'residence' ... one can reside in one place but be domiciled in another...." *Mississippi Choctaw Indian Band*, 490 U.S. at 48, 109 S.Ct. at 1608. (Citations omitted.) The federal definition of domicile assesses a person's state of mind concerning intent to remain in a physical location. *Id.* A person may retain his or her domicile while residing outside that place. Residence describes one's physical presence.

The term "domicile" is not used in the Act's legislative history, but the history does include "residence." Plaintiff's discussion of the meaning of "domicile" underscores its legal distinction from "residence." The Commission's use of the word "residence" does not support plaintiff's assertion that "domicile" was intended.

 Plaintiff relies on a Department of Justice Memorandum included in its appendix entitled *ORA Eligibility Appeal, Michiko Toda, File No. 250708* to support her argument that a deprivation of liberty may be based on the claimant's exclusion from legal domicile. The claim discussed in that memo was made under a specific regulation: 28 C.F.R. § 74.3(b)(4). That regulation covers compensation for lost property and it uses the term "domicile." Domicile was relevant to that memorandum because the Regulation had a domicile requirement for eligibility. Plaintiff's request is for compensation under 28 C.F.R. § 74.3(a)(4), and that section makes no reference to domicile.

## VI

Neither the statutory language of the Civil Liberties Act nor the legislative history requires that plaintiff's specific deprivation of liberty be compensated. Therefore, we must defer to defendant's regulation if the interpretation is reasonable.

It is reasonable for defendant to interpret the statute and promulgate regulations that clarify which individuals are eligible for compensation. Here, the Regulations are faithful to the purpose of the Act, which is to compensate those individuals "most directly affected." Identified groups are delineated on a reasonable basis. The Regulations are not arbitrary, capricious, or otherwise con-

trary to Congressional intent. Defendant could have chosen another approach, but this does not mean that it must have done so. So long as the Department of Justice's interpretation of the statute is not unreasonable, we cannot substitute our own judgment.

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED; defendant's cross-motion for summary judgment is GRANTED. The Clerk will dismiss plaintiff's complaint. No costs.