Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a nonveteran and former employee of the Navy Department, seeks to recover back pay from the date of her *608 separation on tbe ground that she was illegally separated by reduction in force. She contends that she was placed in the wrong group in her competitive level. Plaintiff also contends that the action of the Department of the Navy in separating her and the decision of the Civil Service Commission sustaining her separation were arbitrary.
Three questions are presented in this case: (1) whether plaintiff’s separation by reduction in force was properly effected; (2) whether plaintiff was properly placed in subgroup III-B on the retention register; and (3) whether the actions of the Department of the Navy and of the Civil Service Commission were arbitrary.
Eegarding the first question — plaintiff became employed by the Department of the Navy in 1951 and was given an indefinite appointment as a Contract Specialist, GS-12, effective April 9, 1951, under authority of Civil Service Certificate No. H-8689, Civil Service Commission, dated March 2,1951.
As the result of the anticipated decrease in work load for the fiscal year 1954 for the Navy Purchasing Office, the Chief of the Bureau of Supplies and Accounts directed in June of 1953 that the personnel ceiling of the purchasing office be reduced by 25 persons. It was decided that one GS-12 Contract Specialist would be eliminated. Therefore, plaintiff was placed in group III-B in her competitive level for the purpose of compiling the retention register. Since the only other two positions in plaintiff’s competitive level were held by subgroup A employees, plaintiff was separated.
The above gives rise to our problem. If plaintiff’s appointment was properly an indefinite one which did not confer civil service status, then she was properly placed in subgroup III-B on the retention register.
The defendant contends that at the time plaintiff received this appointment, it did not confer civil service status and such was the only type that could be given.
We must look to the record of employment, the statutes, and the civil service regulations for the answer.
Plaintiff contends that she did not resign her position with the Department of Labor; that she merely transferred to the Department of the Navy. She says this was done without *609 interruption in service and tbat her annual leave and sick leave were transferred.
The record shows that on March 26, 1951, plaintiff signed a Form 52 which was a request for personnel action. This form shows the nature of the action requested as “resignation to accept position with the Department of the Navy.”
The official records of the Department of Labor contain a Standard Form 50, which is a notification of personnel action. This form shows the nature of action “resignation (from excepted appointment)” and further states “reason for separation; To accept position with Department of the Navy.”
Thus it is apparent that not only did plaintiff in her signed Form 52 say that she was resigning from the Department of Labor, but that the Department of Labor also so understood as is shown by its notification of personnel action. Furthermore, the Navy Department also must have believed that plaintiff had resigned and was being given a new appointment because in its notification of personnel action it is noted that plaintiff was appointed under the authority of Civil Service Certificate H-8689, March 3, 1951. This indicates a new appointment.[1]
Since it was a new appointment, what then was plaintiff’s status in the Navy Department?
At the time of plaintiff’s appointment there was in effect the Whitten Amendment, 64 Stat. 1066, which provided that all appointments after September 1, 1950, and during the fiscal year 1951, should be indefinite appointments. The reasoning and purpose of Congress in enacting the Whitten Amendment is obvious. As a natural consequence of war, more than a normal amount of employees was necessary. After cessation of hostilities, naturally the inflated employee rolls would no longer be needed. Hence the Whitten Amendment was designed to give the various agencies the right to discharge employees under these circumstances. See Moyer v. United States, 150 Ct. Cl. 627.
Civil ServiceRegulation2.115(a), 5 C.F.E. (1952 Supp.), provides:
*610 Indefinite appointment — (a) In general. On and after December 1, 1950, all new appointments shall be indefinite appointments except those of postmasters in all classes of post offices and, in unusual circumstances, appointments to positions for which the Commission determines that probational appointments are in the interest of the service: Provided, that agencies may give probational appointments after that date to eligibles who were regularly selected from certificates issued prior to December 1,1950, for probational appointment. Such indefinite appointments shall be made from the Commission’s registers of eligibles unless there are insufficient available eligibles. The Commission may restrict certification for indefinite appointment to eligibles that are immediately available because of residence or other conditions. The first year of service under an indefinite appointment shall be a trial period similar to the probationary period established by § 2.113. Persons given such appointments do not thereby acquire a permanent civil service status.
Thus under the Whitten Amendment, supra, and the civil service regulation 2.115 (a), supra, plaintiff could only have received an indefinite appointment.
The question then is whether under this “indefinite appointment” plaintiff was properly placed in group Ill-indefinite.
The civil service retention preference regulation defines group III as follows:
Group III — Indefinite. This group includes persons serving under non-status, non-temporary appointments in positions in the competitive service. It also includes employees in positions excepted from the competitive service serving under any conditions or limitation other than a conditional promotion or reinstatement or a specific time limitation of one year or less. Within this group, persons entitled to veterans preference are in sub-group “A” and others in sub-group “B”. (5 C.F.B. 20.4(c)(3) (1952 Supp.).)
Plaintiff did not have competitive status as is demonstrated by her brief on page 23 thereof, wherein she states: “Plaintiff makes no claim to competitive status and urges less confusion on this point.” Since she was given the only appointment available; i.e., indefinite appointment, and *611 since she had no competitive status, it is clear that plaintiff was properly placed in group III. As a nonveteran she was also properly placed in subgroup “B”. Having been properly placed in group III-B for the purpose of computing a retention register, her rights naturally followed those having more retention points.
The retention register compiled under the aforesaid circumstances showed as follows:
Competitive Area: Navy Purchasing Office
Competitive Level: Contract Specialist, GS-12
Service Count Date: 6-26-63

Therefore, since plaintiff had less retention rights than the other two employees in her competitive level she was properly reached for separation.
Consequently neither the Department of the Navy nor the Civil Service Commission’s Board of Appeals and Review were in any way arbitrary or capricious in their actions regarding plaintiff in this respect.
Plaintiff seeks to avoid the impact of the above by the contention that she was a permanent employee when she went to work for the Navy and that having been a permanent employee at the Department of Labor she was an interagency transferee to the Navy.
Assuming arguendo that plaintiff did not resign and accept a new appointment with the Navy Department, the record is clear that plaintiff’s three appointments at the Department of Labor were designated as excepted appointments, all with limitations as to the duration of employment.
The first appointment, effective April 25,1949, was designated “excepted appointment” with a duration of employment “not to exceed June 30, 1949.”
Effective July 1, 1949, plaintiff was given an “extension of excepted appointment” with a duration “not to exceed September 30,1949.”
*612 Plaintiff’s third appointment effective September 4, 1949, was designated “excepted appointment” with a duration “not to exceed duration of war and six months thereafter.”
Since plaintiff’s appointments were all “excepted” with a time limitation, she could not have been a permanent employee at the Department of Labor.
Plaintiff says the last appointment was an illegal attempt to appoint her under war service regulations, thereby making her a permanent employee. However, nowhere in the notification of personnel action is the term “war service” used, and indeed it could not have been since the war service regulation expired March 7, 1946, prior to her appointment. It was merely a limitation of the duration of her employment which, since the war was not officially over, was a valid restriction on plaintiff’s employment.
Furthermore, since plaintiff did not have competitive status at the time of her employment with the Department of Labor, she could not have transferred to the Navy Department. Competitive status is defined by the civil service regulations as follows:
“Competitive status” means a status which permits a person to be promoted, transferred, reassigned, and reinstated to positions in the competitive service without competitive examination, subject to the conditions prescribed by the Civil Service rules and regulations for such noncompetitive actions. A competitive status is acquired by probational appointment through competitive examination, or may be granted by statute, Executive Order, or the Civil Service rules. (5 C.F.E. 4.301 (a) (5) (1950 Supp.)).
Thus it is clear that plaintiff not only resigned and accepted a new appointment with the Navy Department, but whether she resigned or not, she had not acquired competitive status which was necessary to put her in the classified civil service as required for her transfer.
Plaintiff’s final contention is that the actions of the Navy Department and the Civil Service Commission were arbitrary. As we have previously demonstrated, the action of the Navy in placing plaintiff in group III was proper and *613 not arbitrary, nor could the Civil Service Commission have been arbitrary in sustaining the action of the Navy Department in this respect.
What action then does plaintiff contend was arbitrary? She apparently bases her contention on an allegation that certain Navy officials were “out to get her.”
We can find nothing in the record, other than plaintiff’s own affidavit, to sustain this argument. The record fully discloses that the only reason for plaintiff’s dismissal was for the purpose of a valid reduction in force. Moreover, the affidavit of Captain Tieslau, the officer in charge, reveals that this was the purpose and that nothing else affected the action. This court has always recognized the strong presumption that public officials act in good faith,[2] and there is nothing in the record to overcome this presumption.
The Civil Service Commission fully and fairly considered these charges and found them to be without foundation. Furthermore, since all the actions relating to plaintiff’s removal in the reduction in force were proper, the contention that something occurring long before her separation was arbitrary is not properly for this court’s determination, and is of no significance in this action.[3]
Since plaintiff was properly placed in group III and properly reached for separation, and since no arbitrary action of the Navy Department or of the Civil Service Commission is shown, plaintiff cannot recover in this action.
Defendant’s motion for summary judgment is granted, and plaintiff’s cross-motion is denied. Plaintiff’s petition will be dismissed.
It is so ordered.
Dare, Senior District Judge, sitting by designation; Dureee, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.

 Plaintiff’s annual leave and sick leave were transferred. If this were not authorized, we can only assume it was a mistake.

 Knotts v. United States, 128 Ct. Cl. 489; Librach & Cutler v. United States, 147 Ct. Cl. 605.

 The affidavit of plaintiff reflects that the events referred to which she alleges took place in the Navy Purchasing Office occurred in 1951 and 1952. She was separated July 31, 1953.