Juanita A. ROSETE, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

No. 94–3342.

United States Court of Appeals, Federal Circuit.

Feb. 3, 1995.

Rehearing Denied April 3, 1995.

ray Meeker, Office of Personnel Management.

Before ARCHER, Chief Judge, and NEWMAN and CLEVENGER, Circuit Judges.

ARCHER, Chief Judge.

Juanita A. Rosete petitions for judicial review of the decision of the Merit Systems Protection Board (MSPB or board), Docket No. SE–0831–93–0385–I–1. The November 24, 1993 initial decision of the administrative judge (AJ) sustained the reconsideration decision of the Office of Personnel Management (OPM) denying Rosete's application for retirement benefits under the Civil Service Retirement Act (CSRA). The initial decision became the final decision of the MSPB on April 18, 1994 when it denied Rosete's petition for review. 62 M.S.P.R. 378. We affirm.

I.

Juanita A. Rosete, a citizen of the Republic of the Philippines, was employed by the Department of the Navy (Navy) from August 25, 1966 to July 3, 1992. Rosete worked in a variety of different positions without a break in service for almost twenty-six years under an indefinite appointment in the excepted service.[1] On July 3, 1992, in the face of an impending termination pursuant to a reduction-in-force, Rosete opted to retire. Throughout her tenure, the Navy had never classified Rosete's position as covered by the CSRA, and accordingly, she had never contributed to the Civil Service Retirement and Disability Fund. However, pursuant to a collective bargaining agreement between the United States and the Government of the Republic of the Philippines, she was covered by an alternative retirement plan. Thus, upon her retirement, Rosete qualified for and received the required payment of benefits under the provisions of the collective bargaining agreement.

Juanita A. Rosete, pro se.

John K. Lapiana, Commercial Litigation Branch, Dept. of Justice, Washington, DC, submitted for respondent. With him on the brief were Frank W. Hunger, Asst. Atty., David M. Cohen, Director, and Anthony H. Anikeeff, Asst. Director. Also on the brief were Lorraine Lewis, Gen. Counsel and Mur-

---

1. The "competitive service" includes all civil service positions in the executive branch except those specifically excepted, and the "excepted service" describes those positions which have been specifically excepted from the competitive service. 5 U.S.C. § 2103 (1988); *see also Collaso v. Merit Sys. Protection Bd.*, 775 F.2d 296, 297–98 (Fed.Cir.1985).

Approximately eight months after her retirement, Rosete applied to OPM for retirement benefits under the CSRA. On April 27, 1993, OPM denied the application because Rosete had never held a position covered by the Act. OPM explained that employees with indefinite appointments were not entitled to retirement benefits under the CSRA because they were not covered employees. In seeking reconsideration of OPM's initial decision in the reconsideration request, Rosete claimed coverage based on legislative history to the CSRA, which she contended required coverage for employees with more than twelve months of continuous service. On July 3, 1993, OPM affirmed its initial decision, reiterating that Rosete's twenty-six years of creditable service did not qualify as a covered position under the CSRA.

Rosete timely appealed the OPM reconsideration decision to the MSPB. After a hearing in Manila, Philippines, the AJ issued an initial decision. The AJ affirmed the findings of OPM that, as an employee in the excepted service with an indefinite appointment, Rosete had not held a position that entitled her to benefits under the CSRA. Rosete's petition for review to the full board was denied and she now appeals to this court.

## II.

■ This court has jurisdiction over appeals from the MSPB under 28 U.S.C. § 1295(a)(9) (1988). Our standard of review requires that we affirm a decision of the MSPB unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). The petitioner has the burden of proof of demonstrating entitlement to retirement benefits. *Cheeseman v. Office of Personnel Management*, 791 F.2d 138, 141 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987).

■ A. Eligibility for retirement benefits under the CSRA, 5 U.S.C. § 8331 *et seq.* (1988 & Supp. IV 1992), requires that an employee complete at least five years of creditable service and that at least one of the

two years of service prior to separation be "subject to" the CSRA, *i.e.*, covered service. *Id.* § 8333(a–b). The statute states in pertinent part:

Eligibility for Annuity

(a) An employee must complete at least 5 years of civilian service before he is eligible for an annuity under this subchapter.

(b) An employee or Member must complete, within the last 2 years before any separation from service, except a separation because of death or disability, at least 1 year of creditable civilian service during which he is subject to this subchapter before he or his survivors are eligible for annuity under this subchapter based on the separation.... Failure to meet this service requirement does not deprive the individual or his survivors of annuity rights which attached on a previous separation.

*Id.* While most service is creditable, not all service is covered. *Herrera v. United States*, 849 F.2d 1416, 1417 (Fed.Cir.1988). Covered service only includes an appointment that is subject to the CSRA and for which an employee must deposit part of his or her pay into the Civil Service Retirement and Disability Fund. *Noveloso v. Office of Personnel Management*, 45 M.S.P.R. 321, 323 (1990), *aff'd mem.*, 925 F.2d 1478 (Fed.Cir. 1991); *see also Esteban v. Office of Personnel Management*, 978 F.2d 700, 701 (Fed.Cir. 1992).

The CSRA entrusts to OPM the administration of the Civil Service Retirement System. 5 U.S.C. § 8347(a). The statute also permits OPM to exclude certain categories of employees from coverage under the CSRA, in the following provision:

The Office may exclude from the operation of this subchapter an employee or group of employees in or under an Executive agency whose employment is temporary or intermittent.

*Id.* § 8347(g). Pursuant to this authorization, OPM has promulgated specific regulatory exclusions from covered service. *See* 5 C.F.R. § 831.201(a)(1–17) (1994).

At issue in this case is the section that excludes employees serving under indefinite

appointments from coverage under the CSRA, as follows:

> Employees serving under nonpermanent appointments, designated as indefinite, made after January 23, 1955, the effective date of the repeal of Executive Order 10180.

*Id.* § 831.201(a)(13). OPM and the board both relied on this regulation in denying Rosete's claim for benefits under the CSRA. Rosete contends that "excepted, indefinite" appointments do not fall within the statutory terms "temporary or intermittent" and, therefore, may not be excluded from CSRA coverage.

■■■ B. Statutory interpretation is a question of law which this court reviews *de novo. Weddel v. Secretary of Dep't of Health & Human Servs.*, 23 F.3d 388, 391 (Fed.Cir. 1994). The first step in statutory interpretation is to ascertain the meaning of the language of the statute using the "traditional tools of statutory construction." *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). If Congress has expressed its intention by clear statutory language, that intention controls and must be given effect. *Id.* at 843 n. 9, 104 S.Ct. at 2782 n. 9; *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed.Cir.1994). However, if the statute is silent or ambiguous on a point "considerable weight" and "substantial deference" must be accorded to the interpretation of a statute by the agency that is responsible for its implementation. *Rust v. Sullivan*, 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991); *see also Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1552 (Fed. Cir.1993). Thus, the agency's interpretation need only be reasonable, *Chevron*, 467 U.S. at 842–45, 104 S.Ct. at 2781–83; *see DeCosta v. United States*, 987 F.2d 1556, 1558 (Fed. Cir.1993), and it need not be the only interpretation or even the interpretation that the court would have reached if the issue had initially arisen in a judicial proceeding. *Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11; *see American Lamb Co. v. Unit-*

*ed States*, 785 F.2d 994, 1001 (Fed.Cir.1986). Accordingly, if the agency applies a statutory mandate in some reasonable manner, this court must sustain the agency interpretation if it is not in variance with the plain meaning of the statute. *Chevron*, 467 U.S. at 842–45, 104 S.Ct. at 2781–83; *see Gannett v. United States*, 877 F.2d 965, 968 (Fed.Cir.1989).

C. When the Civil Service Retirement Act was first enacted in 1920, it specifically authorized the exclusion from coverage under the Act of employees with appointments that were either "intermittent or of uncertain duration":

> The President shall have power, in his discretion, to exclude from the operation of this Act any employee or group of employees in the classified civil service whose tenure of office or employment is *intermittent or of uncertain duration.*

Act of 1920, ch. 195, 41 Stat. 614, 614 (emphasis added). Similar language appeared in the 1930 Act. *See* Act of 1930, ch. 349, § 3(g), 46 Stat. 468, 471. The 1942 Act contained this provision with only minor changes in language:

> The President shall have power, in his discretion, to exclude from the operation of this Act any officer or employee or group of officers or employees in the executive branch of the service whose tenure of office or employment is *intermittent or of uncertain duration.*

Act of 1942, ch. 16, § 3(b), 56 Stat. 13, 15 (emphasis added).

In 1956, the administration of the Civil Service System was restructured. Federal Executive Pay Act of 1956, Pub.L. No. 854, 1956 U.S.C.C.A.N. (70 Stat.) 858, 869. The administering authority ceased to be the President and the responsibilities were transferred to the newly reorganized Civil Service Commission. *Id.* sec. 201, 1956 U.S.C.C.A.N. at 866. Also, instead of using the terminology of "intermittent or of uncertain duration," the 1956 Act provided for the discretionary exclusion from coverage of "temporary or intermittent" employees.

> The Commission may exclude from the operation of this Act any employee or group of employees in the executive

branch of the United States Government, or of the District of Columbia government upon recommendation by its Commissioners, whose tenure of office or employment is *temporary or intermittent.*

*Id.* sec. 401, § 2(e), 1956 U.S.C.C.A.N. at 869 (emphasis added). The current provision, which appears at 5 U.S.C.A. § 8347(g), contains substantially the same language.

### III.

A. Rosete argues that her "indefinite" appointment is not encompassed by the terminology "temporary or intermittent" appointment. She contends that the 1956 Act narrowed the permissible exclusions from coverage, as compared to earlier acts. In her view, the term "of uncertain duration" in prior acts may be broad enough to encompass an indefinite appointment, such as hers, but the terms "temporary or intermittent" are not. Because of the language change, Rosete concludes that Congress must have intended different, narrower exclusionary authority.

It is true, as Rosete argues, that the term "temporary" in the 1956 Act could literally have a meaning *different* from the "of uncertain duration" language in prior law. Nonetheless, such a term also can reasonably be interpreted as being the opposite of permanent and therefore covering an appointment of "indefinite duration." *See Slavitt v. United States,* 155 Ct.Cl. 606, 609–10, 1961 WL 8729 (1961) (employees under indefinite appointments are non-permanent). The legislative history clearly supports the latter interpretation.

The Senate initially considered amendments to the CSRA in S. 2875, 84th Cong., 2d Sess. (1956), which was added as an amendment to H.R. 7619, 84th Cong., 2d Sess. (1956), a bill addressing the pay of federal executives. 102 Cong.Rec. 13,683 (1956). When the House refused to accept the amendment, the two bills were referred to a conference committee. 102 Cong.Rec. 13,825 (1956). The conference committee agreed on a substitute for both of them that contained a complete revision of the 1930 Civil Service Retirement Act, and this substitute became law. In the conference committee's analysis of section 2(e) of S. 2875, which described the bill's effect on the classifications of employees excluded from the CSRA, the following statement appears:

> Under present law the President has authority to exclude [from Civil Service Retirement Act coverage] executive branch employees whose tenure is intermittent or of *uncertain duration.* This authority has been delegated to the Civil Service Commission by Executive Order 10530. The bill confers *this authority* directly upon the Civil Service Commission. . . .

H.R.Rep. No. 2854, 84th Cong., 2d Sess. 11 (1956) (emphasis added). This report thus referenced the old terminology, "intermittent or of uncertain duration." The substitute bill, without explanation, contained the new terms, "temporary or intermittent." The conference committee's report did not contain a detailed explanation of the substitute bill, or mention the change of terminology in section 2(e), but stated that "[t]he language in the conference substitute is identical to many sections of S. 2875. . . ." H.R.Rep. No. 2935, 84th Cong., 2d Sess. 35 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3739, 3744.

We are convinced the legislative history shows that Congress did not contemplate any change in the categories of executive branch employees that could be excluded from CSRA coverage. The complete lack of discussion of any change in the CSRA excepted categories of employees and lack of explanation of the language changes warrants interpreting temporary in its ordinary sense as the antithesis of permanent and not in any specialized sense that would modify existing law. *See Keene Corp. v. United States,* —— U.S. ——, ——, 113 S.Ct. 2035, 2041, 124 L.Ed.2d 118 (1993) (in the absence of a clear expression of congressional intent, the court would not presume that Congress "worked a change in the underlying substantive law").

B. While the above analysis indicates the language change was not intended as a substantive change in the 1956 Act, the meaning of the revised language is, at best, uncertain and ambiguous because, as noted above, the term "temporary" is capable of two reasonable interpretations. Under these circumstances, deference must be given to an agen-

cy's consistent, long-standing regulatory interpretation of the statute so long as it is reasonable. *Timken Co. v. United States,* 37 F.3d 1470, 1474 (Fed.Cir.1994). Here, the Civil Service Commission (and later OPM) has adopted one reasonable interpretation of the statutory language and has consistently applied that interpretation for many years. The MSPB, therefore, correctly deferred to the agency's interpretation of the term "temporary" as including indefinite appointments, *i.e.,* appointments that are not permanent. *See* Federal Personnel Manual (FPM), Supp. 296–33, Subch. 35, at 35–6 (Oct. 8, 1993) ("INDEFINITE APPOINTMENT—One given a nonpermanent employee hired for an unlimited period of time."). We too defer to an agency's consistent, reasonable interpretation of a statute. *Wassenaar v. Office of Personnel Management,* 21 F.3d 1090, 1092 (Fed.Cir.1994).

C. Rosete disagrees that the government has consistently (and thus reasonably) interpreted and applied the various enactments of the CSRA. She contends that the government originally gave the statutory language an interpretation that would exclude an "indefinite appointment." Rosete cites Executive Order No. 9154 (E.O. 9154), 3 C.F.R. 1152 (1938–1943), which was issued by the President under the 1942 Act. But the correct source of the regulation at issue under the 1956 Act is Executive Order 10,180, 3 C.F.R. 363 (1949–1953), which superseded E.O. 9154. E.O. 10,180 specifically excluded employees with "nonpermanent appointments," including indefinite appointments, from coverage under the CSRA:

> Persons given nonpermanent appointments pursuant to section 1 of this order are hereby excluded from the operation of the Civil Service Retirement Act....

*Id.* § 3, at 364. *See Gaines v. United States,* 132 Ct.Cl. 408, 416, 131 F.Supp. 925, 929 (1955). The Civil Service Commission later promulgated 5 C.F.R. § 831.201(a)(13) to maintain the policy established by E.O. 10,-180. *Fredeluces v. Office of Personnel Management,* 57 M.S.P.R. 598, 601, *aff'd mem.,* 16 F.3d 421 (Fed.Cir.1993).

The Court of Claims considered E.O. 10,-180 in *Guevara v. United States,* 229 Ct.Cl.

595, 1981 WL 22068 (1981). Guevara, a Filipino citizen, had worked more than twenty-six years for the Navy, taken retirement, and collected retirement benefits under a collective bargaining agreement. Several years later, Guevara submitted an application for retirement benefits under the CSRA. The denial of Guevara's application was sustained by the MSPB, and the board affirmed the denial. On appeal to the Court of Claims, it determined that Guevara's employment was an indefinite appointment. The court held that such an appointment was excluded from CSRA benefits under E.O. 10,180 when Guevara's employment commenced and also excluded from CSRA benefits under 5 C.F.R. § 831.201(a)(13) when his employment ended. *See also Cubacub v. Department of Navy,* 230 Ct.Cl. 908, 908–09, 1982 WL 25269 (1982). Thus, it is clear that E.O. 10,180 is the source of the current regulation, 5 C.F.R. § 831.201(a)(13), and that this regulation has been consistently applied by OPM (and the former Civil Service Commission) for more than forty years.

Consistent with the decisions of our predecessor court in *Guevara* and *Cubacub,* we conclude that OPM's interpretation of the statutory language "temporary or intermittent" is both reasonable and of long standing. This court must defer to that reasonable interpretation by the agency charged with administering the CSRA. *Pine Prods. Corp. v. United States,* 945 F.2d 1555, 1561–62 (Fed.Cir.1991).

IV.

■■■ Rosete also contends that the MSPB did not adequately consider documents that she asserts established her eligibility for CSRA benefits. Pointing to the "Employee Data" section of the SF–50 forms contained in her personnel file, Rosete notes that each form indicates that she held a tenure status that was inconsistent with an indefinite appointment. The MSPB was unpersuaded by this argument and we agree.

The MSPB recognized that this tenure grouping could be circumstantial evidence that Rosete did not hold an indefinite appointment if she was "at any time subject to

the CSRS and [her] personnel record was incomplete as to evidence." *Fredeluces,* 57 M.S.P.R. at 602 n. 4. But the MSPB noted that Rosete did not satisfy either condition. More importantly, the MSPB referred to other parts of the SF–50 forms which specifically relate to civil service retirement coverage. In these parts of the SF–50 forms, the MSPB found that in all cases the "entry is either 'none', 'not applicable' or other" and that "none of the forms contain [sic] an entry reflecting civil service retirement coverage."

Based on its review of the entire record the MSPB correctly concluded that Rosete "received an 'Excepted Appt.–Indefinite' effective August 25, 1966 and she served under that appointment until her retirement on July 3, 1992." Accordingly, because Rosete held an indefinite appointment in the excepted service, none of her service was covered service within the meaning of the CSRA.

We have considered Rosete's other arguments and find them without merit.

*AFFIRMED.*