**Robert J. CONNER, Petitioner,**

**v.**

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 96–3110.**

United States Court of Appeals, Federal Circuit.

Jan. 21, 1997.

Sheldon I. Cohen, Sheldon I. Cohen and Associates, Arlington, VA, argued, for petitioner.

Lesleyanne Koch Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director.

Before RICH, CLEVENGER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

In this federal retirement benefits case, Robert J. Conner petitions for review of the December 12, 1995, final order of the Merit Systems Protection Board (Board), Docket No. DC0831950389–I–1, sustaining the decision of the Office of Personnel Management (OPM) which held that Conner could not make a service credit redeposit under the Civil Service Retirement System (CSRS) because he was covered by the Federal Employees' Retirement System (FERS). We hold that the controlling statute, 5 U.S.C. § 8402(b), is not ambiguous, and that its clear language excludes Conner from FERS, notwithstanding a contrary regulation. We therefore reverse the Board's ruling.

I

Conner began working as a Senate page at age fourteen on January 26, 1949, and continued, with a two-year absence to serve in the Army, through March 15, 1964. During that period, he accumulated approximately twelve years of total Senate service and was eligible to have retirement contributions deducted from his salary under CSRS. He did not, however, choose to have any contributions deducted from his paychecks. Conner started working for the Senate again on March 9, 1988. A few months later, he sought to pay the CSRS retirement contributions he had failed to make decades earlier. Since Conner's earlier employment, however, Congress had enacted FERS, 5 U.S.C. § 8401 et. seq. (1994), largely to supplant CSRS for new government employees.

OPM denied Conner's request to make contributions under CSRS because it found he was ineligible for exclusion from FERS pursuant to 5 U.S.C. § 8402(b) (1994), and thus was unable to enter CSRS. Conner resubmitted his application, which OPM again rejected. After Conner submitted a request for reconsideration, OPM published a notice of proposed rulemaking and issued final regulations regarding the relevant statute on December 14, 1994, to take effect on January 13, 1995. *See* 5 C.F.R. § 842.104 (1996). Under those regulations, OPM issued its final reconsideration decision on February 3, 1995, again rejecting Conner's application.

Conner filed an appeal to the Board from OPM's reconsideration decision. The Administrative Judge (AJ) issued his initial decision on July 3, 1995, affirming OPM's decision to deny Conner's request, stating: "I find that OPM's determination that [Conner] was not excluded from FERS under 5 U.S.C. § 8402(b) was correct, and that he was automatically covered by FERS upon his reemployment in 1988." Because the AJ found OPM's determination to be in accord with section 8402, he did not consider OPM's regulations. The Board denied Conner's peti-

tion for review, and the initial decision became final.

II

This case questions whether Conner is covered by FERS or CSRS. The question is answered by statutory interpretation, a matter of law which we review *de novo. See Martin v. Secretary of Health & Human Servs.*, 62 F.3d 1403, 1405 (Fed.Cir.1995). In construing a statute that is administered by an agency, we must first ascertain whether Congress has spoken directly to the question at issue. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress has expressed its meaning on the precise question using clear statutory language, we must give that intention effect as the controlling law. *Id.* at 843 n. 9, 104 S.Ct. at 2782 n. 9; *Rosete v. Office of Personnel Management*, 48 F.3d 514, 517 (Fed.Cir.1995). If the statute fails to resolve the matter or is ambiguous on the question, however, we must decide whether the agency has adopted a permissible construction of the statute. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782.

The controlling statute in this case, 5 U.S.C. § 8402, defines FERS coverage by exclusion, and states in relevant part:

> *Federal Employees' Retirement System; exclusions*
>
> (a) The provisions of this chapter comprise the Federal Employees' Retirement System [FERS].
>
> (b) The provisions of this chapter shall not apply with respect to—
>
> (1) . . . .
>
> (2)(A) any employee or Member who has separated from the service after—
>
> (i) having been subject to [CSRS], or subchapter I of chapter 8 of the Foreign Service Act of 1980 [FSA]; and
>
> (ii) having completed at least 5 years of civilian service creditable under [CSRS], or at least 5 years of civilian service creditable under [FSA] (determined without regard to any deposit or redeposit requirement under either such subchapter, or any requirement that the individual become subject to either such subchapter after performing the service involved); or
>
> (B) any employee having at least 5 years of civilian service performed before January 1, 1987, creditable under [CSRS] (determined without regard to any deposit or redeposit requirement under such subchapter, any requirement that the individual become subject to such subchapter after performing the service involved, or any requirement that the individual give notice in writing to the official by whom such individual is paid of such individual's desire to become subject to such subchapter);
>
> except to the extent provided for under subsection (d) of this section or title III of [FERS] pursuant to an election under such title to become subject to this chapter.[1]

If Conner falls under one of the enumerated categories in subsections (b)(2)(A) or (b)(2)(B), he may opt out of FERS and seek coverage under CSRS. If he does not match one of the categories, he is forced to use FERS if he wants to contribute to a retirement plan, and may not make a deposit under CSRS.

The interpretation of section 8402 depends initially on the meaning to be given the phrase "subject to." The government asserts that "subject to" in section 8402 is synonymous with "covered by," and thus refers to whether the employee has paid any money into the CSRS. The government, citing other sections of the Civil Service Retirement Act (CSRA), notes that "subject to" is a term of art used by Congress when referring to a coverage requirement. The AJ reached the same conclusion by looking only at section 8402, and noting the section's reference to an individual's "desire to become *subject to* [CSRS]." We agree. The final portion of subsection (b)(2)(B) speaks of an individual giving notice "to the official by

1. Subsection (d) provides an exception for certain individuals under the FSA. Title III covers elections to be subject to FERS made by individuals who were reemployed by the government and who are subject to CSRS. Neither provision is relevant to the interpretation issue at bar.

whom such individual is paid of such individual's desire to become subject to such subchapter." By stating that such notice is to be given to the person who provides paychecks, and who thus would be required to deduct retirement contributions if the employee chose to pay into a retirement plan, this provision indicates that "subject to" means to pay money into the retirement plan. In addition, language identical to that in subsection (b)(2)(B) quoted above has also appeared in previous versions of the CSRA, under which Conner served during his earlier Senate employment. *See* 5 U.S.C. § 8331(1)(C), (D) (1994). In *Rosete v. Office of Personnel Management,* 48 F.3d 514, 516 (Fed.Cir.1995), we noted that service "subject to" CSRS under section 8331 is the same as "covered service," *i.e.,* service for which an employee must deposit part of his or her pay into the Civil Service Retirement and Disability Fund. Thus, to be "subject to" CSRS, an employee must have contributed some amount of money to the fund.

Based on this interpretation of "subject to," the government admits that each subsection is unambiguous if read alone. Subsection (b)(2)(A) covers employees who have been reemployed after having been separated from the service, who have completed five years of creditable service, and who have paid some amount of money into CSRS before separation. Subsection (b)(2)(B) covers employees who have completed five years of creditable service before January 1, 1987, whether or not they have paid anything into CSRS, and whether they have worked continuously for the government or have been separated from service.

The government argues, however, that when read together, the two subsections are ambiguous because they overlap. The government has, therefore, adopted a regulation that interprets subsection (b)(2)(A) to apply to employees rehired after December 31, 1986, after a break in service, and subsection (b)(2)(B) to apply to employees who have *not* had a break in service ending after December 31, 1986. In addition, under the government's interpretation of the statute, to be excluded under either subsection, the employee must have had at least five years of civilian service creditable under CSRS. *See* 5 C.F.R. § 842.104 (1996). For employees hired after a break in service ((b)(2)(A)), the creditable service must have occurred before the last separation from the service, and a part of the service must have been covered by CSRS, *i.e.,* the employee must have paid something into CSRS. § 842.104(c). For employees with no break in service ((b)(2)(B)), there is no time requirement for the service, and the service need not have been covered by (*i.e.,* "subject to") CSRS. § 842.104(d). Conner had a break in service, but he never paid into CSRS during his earlier service; therefore, the government argues under OPM's regulation, he cannot be excluded from FERS and thus may not make a redeposit to CSRS.

We hold that section 8402 is not ambiguous and should be read according to its clear language; thus, under *Chevron,* we need not consider OPM's regulation. The fact that subsections (b)(2)(A) and (b)(2)(B) can both exclude a particular employee from FERS does not demand a conclusion that the statute is ambiguous. It is true that there is some overlap between the two subsections, *i.e.,* both cover an employee who accumulated five years of creditable service before January 1, 1987, who has been subject to CSRS, and who has been separated from the service. This is not a situation, however, where the overlap is so significant as to render either subsection superfluous. Here, each subsection also has its own distinct area of coverage. Only subsection (b)(2)(A) covers employees who did not accumulate their five years of creditable service before January 1, 1987. In contrast, only subsection (b)(2)(B) covers employees who have not been subject to CSRS or have not been separated from service.

Furthermore, this is not a situation in which the two subsections are opposed to each other. Rather, they both point toward exclusion from FERS. An employee who falls under both subsections is not pushed one way by (b)(2)(A) and the other way by (b)(2)(B). He knows precisely his situation—he is doubly excluded from FERS. Under such circumstances, the limited overlap between the two subsections does not by itself

make the statute ambiguous. *See Natural Resources Defense Council v. Reilly,* 983 F.2d 259, 272 (D.C.Cir.1993) (noting in one instance that the overlap between two statutory sections "demonstrates not an ambiguity in the statute, but congressional prudence in providing for foreseeable administrative delays"); *United States v. Pimental,* 979 F.2d 282, 285 (2d Cir.1992) (noting that limited overlap between two statutory subsections does not justify departing from the unambiguous statutory language by reading into one subsection limitations not included by Congress).

When read according to its clear language, section 8402 requires employees to have a tie or anchor to CSRS. Subsection (b)(2)(A) requires employees who have returned to government service after an absence to have had five years of creditable service and to have staked a claim in the system by paying some amount of money into CSRS. Employees who have not staked a claim by paying into CSRS, in contrast, must have accumulated their five years of creditable time before January 1, 1987, to be excluded from FERS under subsection (b)(2)(B).

Conner has such a tie to CSRS. Under the clear language of the statute, Conner may choose to be excluded from FERS under subsection (b)(2)(B). It is undisputed that he has more than five years of creditable service that was performed before January 1, 1987. Subsection (b)(2)(B) does not contain any additional requirements. Because Conner meets all requirements for exclusion from FERS under subsection (b)(2)(B) as correctly interpreted, the decision of the Board is

REVERSED.